## 𝖂𝖍𝖊𝖊𝖑𝖎𝖓𝖌.

### HATCH *v.* CALVERT *et al.*

Decided May 13, 1879.

1879
Special Term.

1. H. filed his bill against C, to subject land to the payment of a negotiable note past due, which he alleges· was endorsed by the payee to him before maturity, and which note was a vendor's lien on this land.   The defendant denies that the plaintiff is the *bona fide* holder of this note, and alleges that he had, *before the note became due,* been served with an attachment in a suit in the same court, brought by a creditor of the payee, which attachment was still pending; and he files with his answer a copy of the record in the attachment-case.   A blank endorsement of the payee's name is found on the back of the note.     HELD :

That the court could not properly render a decree in favor of the plaintiff, till this attaching creditor was made a party to the suit; but the plaintiff had a right to prosecute such a suit on making the necessary parties defendants, and was not required in lieu thereof to file his petition in the attachment -cause.

Appeal from and *supersedeas* to a decree of the circuit court of Kanawha county, rendered on the 15th day of June, 1878, in a cause in said court then pending, wherein A. S. Hatch was plaintiff and Catherine Calvert and others were defendants, allowed on the petition of said defendants.

Hon. Joseph Smith, judge of the seventh judicial circuit, rendered the decree appealed from.

GREEN PRESIDENT, furnishes the following statement of the case :

In October, 1877, A. S. Hatch filed his bill in the circuit court of Kanawha county, to enforce a vendor's lien against certain real estate in said county. This lien was reserved in a deed made by Pliny Fisk and wife, on March 6, 1876, to Catharine Calvert, Francis Calvert, Cornelius Calvert, James Calvert, Josephus Patchell and Caroline Patchell his wife, and William A. Quarrier, guardian of William Calvert, and Elizabeth Calvert; and they, William Calvert, Pliny Fisk and William H. Hogeman, were made defendants. This deed reserves a vendor's lien to secure the payment of the balance of the purchase-money for said lands evidenced by two notes, each of which was executed by all the male grantees in said deeds, were joint and several notes, negotiable and payable at the Kanawha Valley Bank, in Charleston, West Virginia, one year after their date ; and each of them was dated the day said deed bears date, March 6, 1876.

The bill alleges, that the smaller note of $300.00 was payable to the order of W. H. Hogeman, and had been paid; and that the larger note of $1,000.00, was payable to the order of Pliny Fisk; and that shortly after the making thereof, and long before it became due and payable, he transferred and assigned the same to the plaintiff, A. S. Hatch, for a valuable consideration by endorsing his name on the back thereof and delivering the same so endorsed to him. This note was on March 9, 1877, when it became due, duly protested for non-payment, and legal notice thereof was given to Fisk, the payee, and to each of the makers of the note. The bill says that the plaintiff, A. S. Hatch, caused this note to be presented for payment and protested. The note and protest are filed with the bill. On the back of the note the name of the payee, Pliny Fisk, is endorsed ; and a short distance below ·the endorsement are stamped the words : "Pay John Claypool,

cashier, or order per collection for account—Fisk & Hatch"; and this endorsement is also signed Fisk & Hatch, and the names of Fisk & Hatch are signed to this printed or stamped endorsement and the written signatures are both cancelled by black lines being drawn over the names. The protest appended states, that it was presented and protested at the request of the State Bank of Virginia; and it states that notice was given to the makers and to both endorsers sent by mail post paid to Fisk & Hatch, New York. The bill alleges that there is no other lien on this real estate except this vendor's lien, asks for a decree against the makers of this negotiable note of $1,000.00, and for a sale of the land to pay the same. The bill is signed by Hogeman as counsel for the plaintiff, A. S. Hatch.

To this bill William A. Quarrier, guardian of William Calvert, filed his answer in November, 1877. He admits the facts stated in the bill, except he denies that this $1,000.00 note was endorsed by the payee, Fisk, for a valuable consideration to the plaintiff, A. S. Hatch, and so delivered to him, or that A. S. Hatch caused this note to be protested. He admits that Fisk endorsed the note; but he denies its delivery to A. S. Hatch, or that Hatch was the owner thereof. He also states in this answer, that an attachment was issued in the circuit court of Kanawha county, and served on the makers of this note in April, 1876, by Charles B. Curry, who claimed a debt as due to him from the payee in this note, Pliny Fisk, and others, he being a non-resident of this State. And that a bill in the nature of a foreign attachment was at that time filed in this court. That this bill and attachment were still pending and undetermined in this court, and that William H. Hogeman was the counsel who filed the answers of several of the defendants in this cause. He asks the court to dismiss the the plaintiff's action, and relies on his demurrer to the bill and on ch. 106, §24 of our Code. The record of this attachment-case is filed with this answer.

Catharine Calvert, Cornelius Calvert, Francis Calvert, Josephus Patchell and Elizabeth Calvert also filed their joint answer adopting this answer of William A. Quarrier, guardian; and the infant William Calvert by his guardian *ad litem* filed a formal answer, to which answers the plaintiff replied generally. The record in the case of *Charles B. Curry* v. *Pliny Fisk et al.* is as stated in the answer of W. A. Quarrier. The last decree in this cause was rendered at the same term in which the last decree in the cause of *A. S. Hatch* v. *Calvert et al.* was rendered; and it decided among other things that the plaintiff, Charles B. Curry, had shown himself entitled to recover of the non-resident defendant, Pliny Fisk, $502.19; and it ordered the garnishees, the makers of this $1,000.00 note, the subject of controversies in the cause now before us for consideration, to answer the bill in the attachment-cause; and a rule was issued against them to that end returnable on June 4, 1878. The subpœna in the cause before us for consideration was duly served on all the defendants other than Pliny Fisk. The copy of the record made out by the clerk shows this return of the summons as to him: "as to Pliny Fisk not found and no inhabitant of my county."

On June 15, 1878, the court rendered this decree:.

"This cause came on this day to be heard on the process returned duly executed as to all the defendants, and on the bill and exhibits, and joint answer of Catharine Calvert and others, the separate answer of William A. Quarrier formerly filed, and exhibits therewith, also on the answer of the infant defendant by W. S. Laidley, his guardian *ad litem*, who is hereby appointed as such, and on general replication to each of said answers, and on the bill taken for confessed and set for hearing as to the defendants who have not answered, and was argued by counsel. Upon consideration whereof, the court is of opinion and doth accordingly adjudge, order and decree, that the complainant, A. S. Hatch, recover against the defendants, Francis Calvert, Cornelius Calvert,

James Calvert, Josephus Patchell and William A. Quarrier, the sum of $1,077.06 (the amount of the note in complainant's bill described, with interest and costs of protest computed thereon), with legal interest on said sum of $1,077.06, from the 14th day of June, 1878, until paid, besides his costs herein expended, including $15.00 as allowed by statute, and that the complainant have execution for the amount so decreed against the said defendants. And the court is also of opinion and doth accordingly adjudge, order and decree that the complainant is entitled to enforce the aforesaid decree against the real estate described in the complainant's bill, by virtue of the vendor's lien thereon retained in the deed from Pliny Fisk and Elizabeth C. Fisk, his wife, to the defendants, Catharine Calvert, Francis Calvert, Cornelius Calvert, James Calvert, Josephus Patchell and Caroline Patchell his wife, William A. Quarrier, guardian of William Calvert, and Elizabeth Calvert, which real estate is situate on the south side of the Kanawha river, and on the Chesapeake and Ohio railroad, and on Slaughter's creek and its waters, in Kanawha county, West Virginia—the said real estate consisting of two tracts, one of which contains 101 4-100 acres, and the other of which contains 2,805 62-100 acres, and that the amount herein decreed is the only unpaid note secured by said vendor's lien. It is further adjudged, ordered and decreed that unless the defendants, Catharine Calvert, Francis Calvert, Cornelius Calvert, James Calvert, Josephus Patchell and Caroline Patchell his wife, William A. Quarrier, in his own right or as guardian of William Calvert, and Elizabeth Calvert, or some one for them, do, within sixty days from the rising of this court, pay to the complainant the amount herein decreed in his favor, including interest and costs, then William H. Hogeman, who is hereby appointed a special commissioner for that purpose, do proceed to sell the real estate described in the complainant's bill, or so much thereof as may be necessary to pay the amount herein decreed,

with interest and costs, at public auction, to the highest bidder, in front of the court-house of Kanawha county, West Virginia, requiring of the purchaser one-fourth of the purchase-money in cash, and the residue in two equal installments, payable with interest in one and two years respectively after date of sale ; before making such sale the commissioner shall publish notice of the time, place and terms of sale in some newspaper published in Kanawha county once a week for eight successive weeks prior to the day of sale, and before receiving any money under this decree the said commissioner shall give bond with security before the clerk of this court in the penalty of $500.00, conditioned according to law."

From this decree Catharine Calvert, Francis Calvert, Cornelius Calvert, James Calvert, William A. Quarrier and Elizabeth Calvert have obtained an appeal and *supersedeas* to and from this Court. And W. A. Hogeman, the plaintiff's attorney, acknowledges the service of the process of this Court for Pliny Fisk the nonresident.

*William A. Quarrier*, for appellants, cited the following authorities :

9 Gratt. 133; 15 Gratt. 344; 11 W. Va. 457; 9 W. 445; Drake on Attachments §§582–592; *Id.* 700, 701; Code, ch. 125, §8.

*William H. Hogeman*, for appellees, cited the following authorities :

9 Gratt. 131; 10 Gratt. 284; 15 Gratt. 329; 11 W. Va. 449; 10 W. Va. 488; Drake on Attachments §§582–592; *Id.* 700-703; Am. Law. Rev. Oct. 1878, p. 149; Code, ch. 106, §24; 7 Wis. 609; 5 Otto 16; 1 Daniel Neg. Inst. §§663, 784, 812; Story Prom. Notes §§148, 139, 196, 381; 5 Munf. 388; 11 Gratt. 477.

GREEN, PRESIDENT, delivered the opinion of the Court:

It is obvious that the 24th section of chapter 106 of the Code of W. Va. page 561 simply authorizes a claimant of the property attached to file a petition in an attachment-suit claming the property ; but there is nothing in this section requiring such claimant to file such petition, or prohibiting him to bring a separate suit setting up his claim. The plaintiff in this case, A. S. Hatch, could have under this section filed his petition in the attachment-cause of *Curry v. Calvert et al* setting up his claim to the $1,000.00 negotiable note or he could, if he preferred, bring his separate suit claiming this note and asking that its payment might be enforced out of the real estate on which it was a vendor's lien. The only question is, whether, when he instituted such suit, it was not necessary that he should make the attaching creditor, James B. Curry, a party defendant as one who claims that the proceeds of this note was applicable to the payment of his debt by reason of his attachment. It is not seriously disputed, that if this $1,000.00 note was not negotiable, it would be absolutely necessary for the court to have the attaching creditor, Curry, made a party to the suit before the court could have properly entered a decree settling the rights of parties in this case. But it is insisted that, this note being negotiable, the makers of it could not be attached, before the note became due, by the creditor of the payee, and that this attachment could not possibly create a lien in favor of the attaching creditor, Curry. Many authorities are referred to by Drake in his work on Attachments to sustain this position see Drake on Attachments §582 to 588. There are decisions which more or less tend to this conclusion in New Hampshire, Vermont, Pennsylvania, Louisiana, Texas, Wisconsin, Michigan and Kentucky. But on the contrary there are decisions in many States, referred to by Drake in his work on attachments §589 to 592, which tend to the conclusion that an attachment by a creditor of the payee of a negotiable note not due may be sustained, when the maker of such note is the garnishee under certain circumstances. Author-

ities are referred to to sustain this in Connecticut, Tennessee, Mississippi, Missouri, Maryland, Georgia and North Carolina.

In §587 Drake states this as his conclusion : " That, as a general rule, the maker of a negotiable note should not be charged as garnishee of the payee under an attachment served before the maturity of the note, *unless it* be affirmatively shown, that before the rendition of the judgment the note has become due, and was then still the property of the payee."

Daniel in his work on negotiable instruments §784 and §812 states, that when the payee's name is endorsed on the negotiable note, this raises a presumption that such endorsement was made before its maturity, and that the holder acquired it *bona fide* for full value, in the usual course of business, before maturity, and without notice of any circumstance impeaching its validity. But he further says : " That the presumption as to the time of acquiring the instrument is not a strong one. The endorsement is almost invariably without date, and without witnesses. The transaction by delivery merely leaves no foot-print upon the paper by which the time can be traced. And the presumption in favor of the holder at the time of the transfer, being without any written corroborative testimony, is of the slightest nature, and open to be blown away by the slightest breath of suspicion."

The appellants' counsel insists that this record shows many reasons for suspecting that the plaintiff, A. S. Hatch, was not the *bona fide* owner of this note, and that it had not been transferred to him for a valuable consideration either before or since it became payable. The decree in this case complained of was not rendered till after the maturity of this note. And so far from its having been determined in the attachment cause, that the makers of this note could not be liable to pay this note to the attaching creditor, Curry, the court has required the makers to answer his bill. This responsibility of the makers of this note to the attachment-creditor is t husin

that case expressly left open and undecided. It was it seems to me, improper in the court to decide that the makers of this note should pay this note to the alleged holder of the note, A. S. Hatch, without the other claimant of it, Curry, being before the court ; for it may be that on the evidence in the attachment-case the court may hereafter decide, that the makers of this note should pay the amount of it to the attaching creditor, Curry. It would be obviously improper in this court to express any opinion as to the law or facts on this point, whether the makers of this note are responsible to A. S. Hatch, the alleged holder of it, or to Curry, the attaching creditor.

The error of the circuit court was in expressing such an opinion and deciding the case when one of the parties, Curry, was not before the court. For this reason the decree of the circuit court complained of must be reversed

The appellants' counsel also insists, that as the summons and return have been copied on the record by the clerk, and it appears from the sheriff's return that Pliny Fisk was not found and had not been served with process, and as he never filed any answer, the court in this decree erred in reciting that process was served on all the defendants, and in taking the bill for confessed as to him. The appellees insist, that this recital in the decree is conclusive of the fact that process was served on him. He is before this court as an appellee who has been served with the process issued by our clerk, and the case differs but little from the case of *Arnold v. Arnold*, 11 W. Va. 457, except that in this case the parties not served with process, so far as appears, but who were recited in the decree below to have been served with process, appeared in the Appellate Court and filed a waiver of regular service in the court below and a release of errors there, and asked an affirmance of the decree. In that case the decree below was affirmed. Whether on this point this case can be distinguished from that, it is useless decide. In this case the defendant, Fisk, has not asked

of this court an affirmance of this decree ; but the plaintiffs' counsel, as his attorney, admitted the service of the process issued by our clerk ; and I presume that he is of course authorized to waive service of the process against him in the circuit court ; and when this cause is remanded, he will appear for him and waive service of process, or file an answer for him, and thus put this question at rest.

The decree of the circuit court of Kanawha county of June 15, 1878, must be reversed, set aside and annulled ; and the appellants must recover of the appellee, A. S. Hatch, their costs about their appeal in this court expended ; and this cause must be remanded to the circuit court of Kanawha county with directions to grant leave to the plaintiff to amend his bill in a reasonable time, to be fixed by that court, and to make Charles B. Curry a party defendant in said cause ; and with further directions to proceed with said cause according to the rules and principles laid down in this opinion, and further according to the rules and principles governing courts of equity.

THE OTHER JUDGES CONCURRED.

DECREE REVERSED.    CAUSE REMANDED.