# CHARLESTON.

HECHMER, TREASURER OF THE SUPREME COUNCIL CATHOLIC
  KNIGHTS OF AMERICA *v.* GILLIGAN, GUARDIAN, *et al.*

Submitted June 15, 1886.—Decided November 6, 1886.

1. Where a mutual benefit association, which is incorporated, is liable
   to one of two or more claimants for a death-benefit, the treas-
   urer of such association can not file a bill of interpleader to have
   the defendants set up their respective claims, but such bill can
   be filed in such case only by the corporation itself.  (p. 759.)

2. The object of a bill of interpleader is to protect a complainant
   standing in the situation of an innocent stakeholder, and where
   a recovery against him by one claimant of the fund might not
   protect him against a recovery by another claimant.  (p. 759.)

3. Where a bill of interpleader was filed in the circuit court, and de-
   murrer thereto overruled, and $600.00 paid into the hands of the
   "receiver" of the court, and on appeal the demurrer to the bill
   was sustained, the Appellate Court on reversing the decree re-
   manded the cause with instructions to order the money to be re-
   turned whence it came, and then to dismiss the bill with costs.
   (p. 760.)

   *Quære.*—Can a mutual benefit association, which has paid a por-
      tion of a death-benefit to two or more conflicting claimants,
      afterwards file a bill of interpleader to settle the question, to
      whom the residue should be paid.

*J. T. McGraw* for appellant.

*Martin & Woods* for appellees.

JOHNSON, PRESIDENT:

John L. Hechmer, treasurer of the Supreme Council
Catholic Knights of America, filed in the circuit court of
Taylor county his bill of interpleader against the adminis-
trator and heirs of Patrick Hanley, deceased, and John J.
Gilligan, guardian of the children of said Hanley.  The bill
set forth, that the plaintiff was the treasurer of said society,
which society was a mutual benefit association chartered by
the State of Kentucky, and doing business in the State of
West Virginia; that on the 6th day of September, 1880,
Patrick Hanley was admitted to membership in one of the

subordinate branches of said association; that after the time of his admission he expressly requested, that benefits accruing in the event of his death should be equally divided between his wife and children; that on the 31st day of March, 1882, said Hanley died, and his widow and heirs at law were entitled to receive from said society $2,000.00; that on the 15th day of September, 1882, the plaintiff on behalf of said society paid to John J. Gilligan, guardian, &c., $1,000.00, being $250.00 for each of the infant heirs and one half of the said principal sum; that said guardian refused to accept said sum in full of the claims of his wards, insisting that under the stipulation contained in the certificate of membership of said Hanley the said wards and the widow were entitled to equal distribution, and that said wards ought to receive each $400.00; that on the same day plaintiff paid Bridget Hanley, the widow, $400.00, which she refused to accept in full discharge of the liability of said association to her, insisting that said $2,000.00 ought to be divided thus, $1,000.00 to her, and $1,000.00 to her four children; that $600.00 yet remains in plaintiff's hands; that he asked the leave of the said guardian to pay over the $600.00 to the widow, but he would not consent. He says, he has always been willing to pay the same to such person or persons, as may be legally entitled to receive it, and offered to pay the same into court. He says he does not collude with any of said parties, &c. He asks to be permitted to pay said $600.00 into court, &c.; and that the defendants may interplead.

The defendant Gilligan, guardian, &c., demurred to the bill, first because the $600.00 was not paid into court; secondly, because the bill is filed by the treasurer and not by the corporation itself. The infants by guardian *ad litem* answered. The guardian Gilligan also answered; and in his answer among other things he says: "Patrick Hanley at the time of his admission as a member of said branch to-wit, on the 6th day of September, 1880, directed in accordance with the constitution and laws of said Council, that the benefits accruing to him as a member of said Council should be paid on his death to his 'wife Bridget,' and that a certificate was granted to him in accordance with his wish and directions, as respondent is informed and believes, and that

after the issuance of said certificate, to-wit, on the 20th day of March, 1881, the said Patrick Hanley by and with the consent of said Grafton Branch No. 2 changed the beneficiary named in said certificate from 'his wife,' and made the same payable to 'his wife and children equally,' and in accordance therewith had a second certificate issued by the officers of said Grafton Branch No. 2, which said certificate was delivered to said Patrick Hanley, and by him taken to his home and there delivered to his said wife, Bridget, the sole beneficiary named in said first above named certificate, and the same carefully preserved by her until after the death of said Patrick Hanley, when it was produced by her and delivered to a mutual friend, who delivered the same to the complainant, through whose courtesy it is now permitted to be filed herewith."

He states he was importuned to become guardian for said children, which trust he accepted and received said $1,000.00, under the assurance from complainant and Mr. Hanley, that there would be due from said fund to said children either the sum of $1,000.00, or $1,600.00; that the true object and intent of the said Supreme Council Catholic Knights of America is found in the second article of its Constitution, which among other things there enumerated is, "to establish a benefit fund, from which a sum not to exceed $2,000.00, shall be paid at the death of each member to his family, or to be disposed of as he may direct, &c.," which said benefit can be altered and changed at the option, instance and election of the said member, as he may desire, in accordance with the rules and regulations of said council. He "is informed and believes the amount of said benefit fund provided for by the constitution of said Supreme Council is the subject of testamentary devise by the member entitled thereto, and that said member can alter, change and amend any disposition made by him of said fund as often, and to the extent desired by him, subject alone to any reasonable and fair rule that may be enjoined upon him as such member by the laws of said council. Respondent now insists, that after the issuance of the said first above named certificate, the said Patrick Hanley had the right with the consent of the branch of the Supreme Council of which he was a member, to alter and

change the disposition of this fund so as to make his children equal sharers with his wife in the said fund, and that after so changing his disposition of said fund from his "wife" to his "wife and children" and the issuance of said second above named certificate in accordance with his wishes and desires, and having delivered the last named certificate to his said wife, the sole beneficiary in the first above named certificate, and she having accepted the same and kept it during the lifetime of her said husband, and produced it on his death as the proof of her interest in said benefit-fund, and having always claimed under the said last named certificate, she is estopped to deny by her own acts, that the second or last above named certificate is the true and proper one upon which payment should be made."

Bridget Hanley answered and relies on the certificate issued on the 6th of September, 1880, payable to her alone. She denies that said Patrick Hanley, when he became a member of said society or at any time thereafter expressly directed, that in the event of his death accrued benefits should be divided equally between his wife and children, for the reason that in the certificate of membership applied for and received by said Patrick Hanley on the 6th day of September, 1880, respondent is the sole beneficiary named therein; she files the certificate which is payable to her alone. She says that afterwards on the 21st day of March, 1881, as she is informed, another certificate of membership was illegally, irregularly and contrary to the constitution and by-laws of the said The Supreme Council Catholic Knights of America, issued without respondent's knowledge or consent to said Patrick Hanley and erroneously dated March 21, 1880, for the sole purpose, as respondent firmly believes and charges, to defeat the right, which she had previously acquired under, the said certificate bearing date on the 6th day of September 1880. "Copies of the original and amended constitution of The Supreme Council Catholic Knights of America are herewith filed as parts hereof marked exhibits "A, and B," respectively." She admits receiving $400.00, as set out in the bill, but denies having said to complainant that she claimed only one-half of the $2,000.00; for she has always insisted and still insists, that as the sole beneficiary named in

the certificate of September 6, 1880, she is legally entitled to receive the full benefit ot $2,000.00. She charges, that the said second certificate is void and of no effect whatever; that the payment made to the guardian of her children was premature and improvident; that the said sum of money ought to have been paid to respondent and should now be turned over to her by said Gilligan; that respondent is jointly entitled to receive and should receive from the complainant the said sum of $600.00 now in his hands. She prays, that said complainant and said Gilligan shall be compelled to pay the said several sums of money now in their hands respectively.

On the 4th day of April, 1883, the court entered an order requiring the plaintiff to pay into court the said money less $6.25 costs and expenses allowed him by the court. The order required the parties to interplead, and that Bridget Hanley proceed as plaintiff with leave to the other parties defendant to defend the suit.

Gilligan on the 30th day of July, 1883, against the objections of the plaintiff tendered a supplemental answer, in which he denied the incorporation of the supreme Council Catholic Knights of America and also charged, that no copy of its charter has been filed in the office of the Secretary of State nor in the clerk's office of the county court of Taylor county; that said company has not complied with the laws of West Virginia and is not authorized to do business in this State.

On the 8th day of August, 1883, the cause was heard on former orders, &c., answers of Bridget Hanley, John J. Gilligan, guardian, and John H. Davis, *guardian ad litem*, depositions of witnesses, supplemental answers of Gilligan and general replication thereto, and was argued by counsel; and the court decided, that "Bridget Hanley was the sole beneficiary, as named in the first certificate, and her rights were vested as soon as said certificate was issued, and that no subsequent act of Hanley could defeat her right." The general receiver was ordered to pay Bridget Hanley the $600.00 less the $6.25 deducted for costs of complainant, and ordered John J. Gilligan guardian to pay over to Bridget Hanley the $1,000.00, which he had as such improperly received, with interest from September 15, 1882, &c.

From this decree Gilligan guardian appealed.

The first error assigned is overruling the demurrer to the bill. If the Supreme Council Catholic Knights of America had been an insurance company proper and had issued a policy on the life of Patrick Hanley payable to his wife, it would have been beyond the power of Patrick Hanley to procure a change of the beneficiary without her consent. (Bliss on Life Ins., sec. 317). The general rule is, that a policy of insurance and the money to become due under it belong, the moment it is issued, to the person or persons named in it as the beneficiary or beneficiaries, and that there is no power in the person procuring the insurance by any act of his by deed or will to transfer to any other person the interest of the person named in the policy. (Bliss on Life Ins., sec. 318). The person, whose life is insured, is under no obligation to pay the premiums, unless he has covenanted so to do; but if he does so, the person originally designated in the policy will derive the benefit. The change of designation can only be made by the person originally designated, therefore such person must concur in the change. (Bliss on Life Ins., sec. 337).

In *Chapin* v. *Fellows*, 36 Conn. 132, it appeared, that a policy of insurance on the life of a husband issued on the application of a wife was made payable to the wife for her sole use, and in case of her death before her husband to be paid to her children. She died before her husband leaving children. After her death the husband surrendered the policy and took out another for the same amount in his own name, and for his own sole benefit, the new policy being upon the same person and dated back, so as to be of the same date with the other. After paying one year's premiums on the new policy the husband died insolvent. Held, that in equity the substituted policy belonged to the children, and that they and not the creditors of the husband were entitled to the insurance money. To the same effect are *Lemon* v. *Phœnix Mutual Life Company*, 38 Conn. 294; *Recker* v. *Charter Oak Life Insurance Company*, 27 Minn. 193, S. C. 38 Am. Rep. 289; In *Matter of Succession of Rossler*, 23 La. Ann. 455; *Hutchings* v. *Miner*, 46 N. Y. 456; *Gould* v. *Emerson*, 99 Mass. 154.

But fraternal societies with a constitution and by-laws are on a different basis. The regulations, that is, the constitution and laws, to which the members subscribe, by which and all changes of which they agree to be bound, are contracts and will be enforced by the courts like all other contracts if not against public policy. (*Erdmon* v. *The Mut. Ins. Co. of the Order of Herman's Sons, of Wisconsin*, 44 Wis. 376; *Gooch* v. *Association for the Relief of Aged Females*, 109 Mass. 558; *Grosvenor* v. *United Society of Believers*, 118 Mass. 78; *Chamberlain* v. *Lincoln*, 129 Mass. 70; *Karcher* v. *Supreme Lodge Knights of Honor*, 136 Mass. 368; *Harrington* v. *The Workingmen's Benevolent Association*, 70 Ga. 340; *Supreme Commandery of the Knights of the Golden Rule* v. *Ainsworth*, 71 Ala. 436; *Hellenberg* v. *Dist. No.* 1 *of I. O. of B. B.*, 94 N. J. 580; *The Osceola Tribe No.* 11 *I. O. R. M.* v. *Schmidt*, 57 Md. 98; *Torom* v. *The Howard Beneficial Association*, 4 Pa. St. 519; *St. Patrick Male Beneficial Society* v. *Mc Vey*, 92 Pa. St. 510; *Robinson* v. *Yates City Lodge A. F. & A. M.*, 86 Ill. 598; *Maryland Mut. Ben't Society of Red Men* v. *Clendenen*, 44 Md. 429; *McAbe* v. *Father Matthew T. A. B. Society*, 24 Hun 149; *Gundlach* v. *Germania Mechanics' Association*, 4 Hun 339; *The Supreme Council of the Catholic Mutual Benefit Association* v. *Priest*, 46 Mich. 429). If it had appeared in this record, that the constitution and laws of the society had permitted the holder of the certificate to change the name of his beneficiary without her consent, then the last certificate would be good, and the first void.

The bill alleges, that the society is a mutual benefit association, and had issued a certificate to Patrick Hanley payable to his wife and children equally. It makes no mention of the second certificate, which is referred to in both the answer of Bridget Hanley and of the guardian. Just what the trouble was is not easily seen in the bill, save this, that the "certificate was payable to the wife and children equally," and the wife claimed half, and the children, four in number, each claimed through their guardian one fifth. This was not the true state of the case, as appears by the answer. The real trouble was, that two certificates were in fact issued by the society, one payable to one beneficiary, the other to more than one. This defect however could not have been taken

advantage of on demurrer; and when the answer came in, the bill might have been amended, if it had been otherwise good. · Could the bill at all in a case like this be filed by the treasurer and not by the corporation itself? I have seen but one case where it was permitted; and there it was filed by the secretary on behalf of the company, The Norwich Union Life Insurance Society, and it was permitted in that case, because an act of parliament authorized the company to sue in the name of its secretary. It was an interpleader, and it was held, that the affidavit ought to show, that the company did not collude with the defendants. (*Bignold* v. *Audlund*, 11 Simons, 34 Eng. Ch'y R. 22). The bill here is not defective because not properly sworn to. The affidavit avers that the company does not collude with the defendants.

The object of a bill of interpleader is to protect a complainant standing in the situation of an innocent stakeholder, and when a recovery against him by one claimant of the fund might not protect him against a recovery by another claimant. (*Badeaw* v. *Rogers*, 2 Paige 209). After judgments are obtained by two claimants for a fund against a debtor, it is too late for the debtor to file a bill of interpleader, but he is liable for both judgments. (*Haseltine* v. *Brickey*, 16 Gratt. 116). It is said by some of the text-writers, that an agent may file a bill of interpleader. Where this is allowed, it is under peculiar circumstances, where the agent might be liable, if he paid the debt, to the principal; as where the principal had created a lien in favor of another person on funds in the hands of his agent, the agent may file a bill of interpleader against his principal and the other claimant. (*Smith* v. *Hammond*, 9 Con. Eng. Ch'y 144).

In this case it is clear, the treasurer occupied no such position. It was the principal The Supreme Council Catholic Knights of America, which wanted the protection against the adverse claimants to the money it owed, and it wanted a complete discharge from such liability. The treasurer did not owe the money; the society owed it; and if the treasurer had paid the fund to the wrong person, or the society through him had done so, it would be no payment of the claim, and the person having the legal claim could sue, and recover the money; therefore as it was the liability of the Company,

that was sought to be discharged, the Company alone could file the bill; not being under any compulsion or ignorance of the facts. I can not see how a bill of interpleader could be filed by the Company after having paid out a large part of the fund to adverse claimants. Sometimes under peculiar circumstances it has been permitted, when a part of the debt has been paid, before the bill was filed (*Jew* v. *Wood*, 43 Eng. ch. 579 3 Brown, *Nash* v. *Smith*, 6 Conn. 421). It is very clear that the treasurer had no right to file the bill in this case; and the demurrer to the bill ought to have been sustained; and there should not have been an order to pay the $600.00.

The decree is reversed with costs, and the case remanded with instructions to require the said $600.00 to be paid back to The Supreme Council Catholic Knights of America, and when so paid over, to dismiss the bill with costs.

REVERSED.   REMANDED.