# CHARLESTON.

## HOGG *v.* McGUFFIN.

Submitted September 7, 1911. Decided February 25, 1913.

1. JUDGMENT—*Conclusiveness—Persons Concluded.*

   In a suit between the debtor and one claiming an equity in a certain portion of a fund deposited by the debtor with a third person, a decree in favor of the claimant is conclusive against the debtor's creditors who are claiming only liens upon such

fund, and can not be collaterally assailed by them in any event, nor directly except for fraud and collusion. (p. 88).

2.   SAME.

   If the stakeholder is a party to such suit, and has been directed by a decree of the court to turn over to the claimant the portion of the fund found to be his, he can not refuse to do so on the ground that, after the suit was brought, he was garnished by creditors and debtors. (p. 89).

3.   COURTS—*Conflicting Jurisdiction*—*Courts of Same State.*

   The circuit court in which the claimant brought his suit, to which the stakeholder is a party, can not be ousted of its jurisdiction by the subsequent order of another circuit court which acquired jurisdiction over the stakeholder in suits brought by the creditors against the debtor. (p. 89).

Appeal from Circuit Court, Mercer County.

Suit in equity by Gory Hogg against R. M. McGuffin and others. From a decree for plaintiff, defendant Citizens' National Bank of Charleston, trustee, etc., appeals.

*Affirmed.*

*Mollohan, McClintic & Mathews, Geo. S. Wallace,* and *Charles H. Jones,* for appellant.

*Hubard & Lee* and *A. W. Reynolds,* for appellee.

WILLIAMS, JUDGE:

After the case of *Hogg* v. *McGuffin,* 67 W. Va. 456, was decided by this Court, Gory Hogg filed his amended or supplemental bill in the circuit court of Mercer county, setting up the fact that the money had been collected by the Citizens National Bank of Charleston, on the Dixon notes payable to McGuffin, which had been deposited with it for collection in the manner and according to the agreement described in the former opinion in this cause, and prayed for a decree against the bank, directing it to pay to him the sum of $16,620, with interest, in discharge of the decree rendered in his favor by this Court. Thereupon the bank and M. M. Williamson, trustees, tendered their answer, and cross-bill in the nature of a bill of interpleader, setting up the fact that a number of the creditors of McGuffin had obtained judgments and executions before the rendition of the decree by this Court in favor of Hogg, alleging that it had been

garnished by a number of said creditors, whose debts are set out in the cross-bill, and prayed that they might be brought into the suit, and required to litigate with Hogg their respective claims of priority to the fund, to the end that the bank, as trustee and stakeholder, might be protected in the disbursement of said funds. Plaintiff objected to the filing of so much of the answer as was intended as a cross-bill and called for affirmative relief, and the court sustained the objection, but allowed the paper to be filed simply as an answer to the bill, and heard the cause on amended bill, answer and general replication thereto, and decreed that the bank pay to Hogg the sum above stated. From that decree the Citizens National Bank and M. M. Williamson obtained this appeal.

The bank in its answer admits that it has in its hands $58,141.-28 collected on the Dixon notes payable to McGuffin. It was a party to Hogg's original bill, and, therefore, knew that Hogg's equitable claim to a part of the funds in its hands was superior to the liens upon such part, claimed by any of McGuffin's creditors. The decree of this Court determined that fact. Hogg was not claiming the right simply to charge the fund with a debt; he was claiming the fund itself, or rather so much of it as was derived from the sale by McGuffin to Dixon of fifty shares of stock in the Harvey Coal & Coke Company; and the court decreed that $16,620 of the fund belonged to Hogg, by virtue of his contract with McGuffin, giving him the right, for two years from the time he had purchased from McGuffin the fifty shares of stock in the Pike Collieries Company, to return those shares and receive from McGuffin a like number of shares in the Harvey Coal & Coke Company in lieu thereof. Hogg decided within the two years to make the exchange of stock, but McGuffin had in the meantime sold it to S. Dixon, an innocent purchaser, without notice of Hogg's equity, and the court could not decree specific performance of McGuffin's contract, but held that Hogg had an equitable claim to the fund derived from the sale of the stock, and could follow it up. The funds were then in the form of notes payable to McGuffin, in the hands of the bank for collection; they had not passed into the hands of an innocent holder for value, and out of Hogg's reach. The notes were still McGuffin's property, in the hands of the bank, at the time Hogg

brought his suit in Mercer county and made the bank a party to it. Hogg's title to $16,620 of the fund while only an equitable one, was superior to McGuffin's, and, being superior to the debtor's title, his creditors could acquire no liens upon it. It is a familiar principle of law that the creditor can acquire no greater right in respect to the debtor's property than the debtor himself has. The former decision, in effect, held that McGuffin sold stock in the Harvey Coal & Coke Company which virtually belonged to Hogg, and that he was bound to turn over to Hogg the proceeds thereof. Hogg's right was a property right, and was necessarily superior to any lien that a creditor of McGuffin could acquire on the funds. Hogg's right was to the stock itself, from which the fund was derived, and no liens were acquired before the stock was sold; all the liens averred in the cross-bill to exist were acquired after that time. The bank would have taken no risk in turning over to Hogg his portion of the fund, and it should have done so.

But, it is insisted, the bank could not safely turn over the funds except upon order of the circuit court of Fayette county; and this for the reason in July, 1909, that court had directed the bank to hold the fund subject to that court's order. It appears that a number of suits were pending in the circuit court of Fayette county against said McGuffin, to some of which the Citizens National Bank appears to have been a party, and that on the 13th day of June, 1909, an order was made in those causes which seem to have been heard together, directing the bank, upon payment to it of the Dixon notes, to turn over to him the stock which he had deposited as security for the payment of the notes and further directing it, as special receiver for the purpose to hold the money and not pay it out, except by order of the court. But long before that order was made, Hogg had brought this suit in the circuit court of Mercer county, and had made the bank a party defendant. Process to answer the bill was served on it on the 21st of December, 1907. The bank was, therefore, subject to the jurisdiction of the circuit court of Mercer county long before it was appointed special receiver for the Fayette circuit court, and was bound to obey the decree of the former court. The circuit court of Fayette county could not oust the Mercer court of its jurisdiction by an order subsequently made.

The decree will be affirmed, but without prejudice to the rights of the creditors claiming liens, by attachment or execution, on the residue of the funds in the hands of the bank, and without prejudice to any rights the bank may have to have the priorities of liens determined among the cerditors of R. M. McGuffin, deceased, before making disbursement thereof.

*Affirmed.*

MILLER, JUDGE, *(dissenting)*:

I am unable to concur in the opinion prepared by Judge WILLIAMS. The decree and mandate of this Court on the former hearing, reversing in part the decree below which dismissed plaintiff's bill, and quashed the attachment, among other things gave a money decree to plaintiff against McGuffin, for $16,620,-00, with interest and costs, and adjudged that plaintiff had the right to have said sum paid him out of the four promissory notes for $25,125.00, each, and one for $14,575.00, made by Dixon to McGuffin, and that the money called for constituted a trust fund on which plaintiff had a lien and charge to satisfy his decree, and that the appellant, the Citizens National Bank of Charleston, might collect of said notes a sufficient sum to satisfy said decree and make payment thereof to said Hogg, such collection and payment to stand as a credit to the *bank against any demand of R. M. McGuffin,* and that if it should collect said notes it should pay to Hogg his decree, interest and costs.

The bank answered that it was a simple stakeholder, and sought protection at the hands of the court. The decree below quashing the attachment was not disturbed. It was decided there was no fraud as alleged on which the attachment could stand; but that a trust on the notes and fund existed in favor of plaintiff which should be enforced in equity.

When the cause went down to the circuit court, plaintiff filed a supplemental bill, making the bank a party, alleging collection of the notes and asking for a decree against it for the money decreed against McGuffin. The bank answered, admitting collection of the notes, but showing that besides its position as trustee under the contract between McGuffin and Hogg, and Dixon, exhibited with its former answer, numerous other suits at law and in equity, had been subsequently brought, in Fay-

ette and other counties, in which it and Dixon had been summoned as garnishees, and that by an order of the circuit court of Fayette county, in said causes, it had been appointed a special receiver, and ordered and directed to hold said sum of money in its possession, to be paid out only on the order of that court, and as directed in said several causes; that in the circuit court of Mingo county, the Charleston National Bank, had, in September, 1907, recovered a judgment for $10,122.29, against McGuffin, and by process of garnishment, served on Dixon, the debtor, on October 24, 1907, before this suit was brought, was claiming a lien on the said fund; that the New River Banking & Trust Co., had, in the circuit court of Mingo county, on December 6, 1907, and in the circuit court of Kanawha county, on February 19, 1908, and on January 6, 1909, recovered judgments against McGuffin aggregating over $23,000.00, and served garnishee process on said Dixon; that other judgment creditors also claimed liens on said fund by process served on Dixon, copies of all which were exhibited. And it was further alleged that since filing its answer numerous other creditors of McGuffin by suits and garnishee process, in Mingo, Cabell and other counties, served on Dixon and respondent, were claiming liens on said funds, in all aggregating with interest a sum exceeding $63,000.00. And by this answer, constituting a bill of interpleader, and seeking cross-relief respondent among other things alleged that all of said judgments were obtained and executions issued thereon before the decree of this Court in the cause was pronounced; that, as appears from the opinion of this Court, the attachment herein had been quashed, and that the question presented to respondent, as stakeholder, was whether such judgments, executions and suggestions have priority over the decree of this Court, and that respondent holding said fund, as aforesaid, only desired legal protection in the distribution thereof to those legally entitled thereto, and the prayer of the answer, asked to be treated as a cross bill, was that McGuffin's administrator, and the said several claimants be interpleaded and made defendants, and compelled to answer, and to litigate their several claims to said fund, and that their respective rights and priorities therein might be established and adjudicated, and distribution made, and for general relief.

In my opinion these facts presented a proper case for a bill of interpleader and. that the bank was entitled to file such a cross-bill.      The following authorities, with many others that might be cited, and which I will not undertake to review and apply, I think justify this conclusion.      *Hechmer* v. *Gilligan,* 28 W. Va. 750; *Haseltine & Walton* v. *Brickey,* 16 Grat. 116; *Oil Run Petroleum Co.* v. *Gale,* 6 W. Va. 525; *C. & O. Ry. Co.* v. *Paine & Co.,* 29 Grat. 502.      It is said that the decree here furnished ample protection to the bank.      We can not certainly say so.      The claimants sought to be brought in were not parties to this suit, and of course are not legally bound thereby.      How can the bank know what rights may be asserted against Hogg or it in the numerous suits pending and in which it has been served with process; what can it know in advance what the decree of the circuit court of Fayette county may be in the cause pending in that court; or what the judgment against it may be in the many other cases in which it has been summoned?      I do not think it should be subjected to all these chances, and that a bill of interpleader is its proper remedy.