# CHARLESTON.

McGREW *et al.* v. MAXWELL, JUDGE, ETC.

Submitted September 6, 1917.   Decided September 25, 1917.

1.  COURTS—*Concurrent Jurisdiction—Injunction.*

    The general rule is that when courts of concurrent jurisdiction are in conflict, the court first to obtain jurisdiction of the subject matter and of the parties has the exclusive right to maintain the same, and can not be enjoined by such other court from the exercise of that jurisdiction and from pronouncing and enforcing its judgments and decrees against the persons and property involved.  (p. 721).

2.  SAME—*Priority of Jurisdiction—Attachment Lien.*

    By attachment sued out pursuant to chapter 106, of the Code, of this State, and levied on the lands or personal property of defendant, a lien is thereby acquired and the court first to take jurisdiction thereby acquires the exclusive jurisdiction and dominion of the property, with right to pronounce and enforce its judgments and decrees respecting the same, and this is so whether the property attached be land or personal property taken into actual custody by the officer.  (p. 722).

3.  SAME—*Concurrent Jurisdiction—Injunction.*

    Nor can another court of concurrent jurisdiction so interfere .by injunction or otherwise upon the principle of avoiding a multiplicity of suits; want of equity jurisdiction of the subject matter of the controversy; merger of the cause in the judgment or decree of some other court in a foreign jurisdiction.  All such supposed rights involve questions proper to be presented to the court first to acquire jurisdiction and dominion over the property involved, as provided either by statute or by some other suitable proceeding of intervention in that court.  (p. 725).

Prohibition by James H. McGrew and others against Hon. Haymond Maxwell, Judge, etc., and others.

*Writ awarded.*

*Cox & Baker, Moreland & Guy* and *Donley & Hatfield,* for petitioners.

*Smith & Jackson,* for respondents.

*George M. Hoffheimer* and *R. S. Douglass, amici curiae.*

MILLER, JUDGE:

Petitioners are contract creditors of Josiah V. Thompson, a citizen and resident of Pennsylvania. In several equity suits, begun and prosecuted in Monongalia County, they sued out attachments on the ground of the non-residency of Thompson, and caused them to be levied on the coal lands and mining rights of the defendant situated in that county. The process was executed on Thompson by publication alone. The bills of complaint prayed for decrees for the money due or to become due, for enforcement of the attachment liens, and for decrees of sale of the lands to satisfy the debts for which the attachments issued. Subsequently in five of said suits consolidated and heard together an order of reference was made to ascertain and report the debts and liens and their priorities on the lands attached, and upon the return of the report of the commissioner to whom the causes were referred, decree was pronounced in favor of the several lienors, including the petitioners, for the amounts of their debts, and that the lands attached be sold by commissioners appointed thereby to make the sale. The bills filed in each suit made all prior-lienors parties, and besides the specific relief prayed for the bills contained prayers for general relief.

, Subsequently to these proceedings respondents Hayden, Davisson, and Furbee, who in several suits, subsequently begun in Ohio County, obtained personal judgments at law against said Thompson, for debts alleged to be due them, filed their bill, in the nature of a general creditors bill, in the circuit court of Harrison County, where they had docketed said judgments, making petitioners and all other lien creditors of Thompson, there and elsewhere, and the commissioners appointed by the decree of the circuit court of Monongalia County to make sale of the lands located in that county, and others, parties defendant thereto.

The general purposes of said bill were to convene all the creditors of Thompson in that suit, to marshal the assets, and for the appointment of a receiver thereof, to conserve the same, and because of certain supposed equities and rights as against the decrees and proceedings of petitioners and other attaching creditors in the prior suits brought and pending in the circuit court of Monongalia County, and the alleged want of jurisdiction of that court to pronounce the decrees upon said attachments, and for the sale of the lands located and so attached in that county, there was a prayer for an injunction, and on May 25, 1917, an injunction, previously refused by the circuit court, was awarded on said bill by one of the judges of this court against the defendants named therein, their agents and attorneys, and each of them, enjoining and restraining them ''from procuring to be made and from making and from attempting to make, and from permitting in their respective attachment suits to be made, any sale of any property of the defendant Josiah V. Thompson in the bill and exhibits mentioned and referred to, except under order or decree of the Circuit Court of Harrison County, in this cause, and from proceeding in any wise to enforce their respective liens, if any they have, by sale or otherwise, in any attachment suit or suits in the bill mentioned, or in any other suit or in any other manner, except by appearing in this case and prosecuting and enforcing the same herein; and that the defendants David. H. Courtney, Rufus E. Morgan, Clymer National Bank, Ira E. Hall in his own right and as one of the personal representatives of Squire T. Hall, deceased, E. Benton Hall in his own right and as one of the personal representatives of Squire T. Hall, deceased, S. Judson Hall, Guy A. Hall, Edward G. Donley, Special Commissioner, Frank Cox, Special Commissioner, and James R. Moreland, Special Commissioner, their agents and attorneys, be and they are each enjoined and restrained from making, causing or permitting to be made, or attempting to make any sale of any property of the defendant Josiah V. Thompson in the bill and exhibits mentioned or referred to, except herein upon maturity and under final decree.''

The present rule in prohibition was awarded upon the petition of some twenty six of the persons, firms, and corporations who had so sued and attached the property of said Thompson in Monongalia County, and whose debts, and liens, in the five consolidated causes aforesaid had already been adjudged and decreed against the lands of Thompson, and which lands had been decreed to be sold therein for the satisfaction of the attachment liens thereon.

What the petitioners seek, according to the prayer of their petition and the rule awarded thereon, is that the Honorable Haymond Maxwell, Judge of the circuit court of Harrison County, be prohibited from proceeding to enforce the injunction so awarded on said bill against them and against Edward G. Donley, James R. Moreland and Frank Cox, special commissioners, appointed to make sale of the land so located in Monongalia County, and against certain trustees also by the decree pronounced in said consolidated causes directed to make sale of certain of the lands of Thompson in said county, and against the plaintiffs in the several attachment suits so instituted and pending in the circuit court of said county by plaintiffs other than said petitioners, and from punishing by contempt proceedings any violations of said injunction by said petitioners, special commissioners, trustees, and persons not petitioners, who are plaintiffs in said attachment suits, or by any of them, and from adjudicating the rights and interests of the petitioners involved in the suits so instituted by them, and in the real estate of said Thompson so levied on, and from pronouncing any decree as to the liens thereon claimed by petitioners, or as to the possession, custody and control of said real estate, covered thereby.

Numerous questions are sought to be presented by motions, returns, and other pleadings, and in the able arguments and briefs of learned counsel, but we will notice those only which we conceive to be fairly presented and are necessary or proper to be considered in the disposition of the case.

The principal proposition of law relied on to justify the award of the writ is that when courts of concurrent jurisdiction are in conflict, that one which first took cognizance of

the cause has the exclusive right to entertain and exercise such jurisdiction to the final determination of the action and the enforcement of its judgment or decree, and that every other court is without jurisdiction or authority to in any way interfere with or interrupt the orderly proceedings of the court first to take jurisdiction. This proposition has been well and finally established by a long line of adjudged cases, state and federal, cited by counsel, including the decisions of this court; indeed the general proposition is not controverted; its application to the facts in this case only is challenged. The decisions referred to are: *Peck* v. *Jenness,* 7 How. 612; *Freeman* v. *Howe,* 24 How. 450, 456; *Covell* v. *Heyman,* 111 U. S. 176; *Shields* v. *Coleman,* 157 U. S. 168; *Farmers Loan & Trust Co.* v. *Lake Street El. R. Co.,* 177 U. S. 51; *Palmer* v. *Texas,* 212 U. S. 118; *Wabash R. Co.* v. *Adelbert College,* 208 U. S. 38; *State* v. *Fredlock,* 52 W. Va. 232. And many other cases illustrating the application of this principle might be cited, among them are our cases of *Henderson* v. *Henrie,* 61 W. Va. 183; *Prewett* v. *Citizens National Bank,* 66 W. Va. 184; *Hogg* v. *McGuffin,* 72 W. Va. 86.

The principle of the propositions relied on by respondents is that the attachment proceedings in Monongalia County, if valid, like judgments, simply created liens on the lands attached, and as no possession of these lands was taken or could have been taken by the officer levying the attachments, the court in Monongalia County thereby acquired no possession or control over the property to the exclusion of a court of concurrent jurisdiction, and that the rule relied on by petitioners only applies when there is actual or constructive possession by the court first to assume jurisdiction. For this counsel cite and rely on our case of *August* v. *Gilmer,* 53 W. Va. 65, and the federal cases of *Jackson* v. *Parkersburg, etc., Co.,* 233 Fed. 784, and *In Re Hall & Stilson Co.,* 73 Fed. 527. Of these *August* v. *Gilmer,* is not pertinent to the phase of the proposition relied on; *Jackson* v. *Parkersburg, etc., Co.,* relates to the question of parties; *In Re Hall & Stilson Co.,* though of doubtful authority, and repudiated in *Beardslee* v. *Ingraham,* 183 N. Y. 411, we think, supports the general proposition relied on by petitioners, in

its specific application to the case at bar; in reality it only decides what is the effect of the levy of an attachment on land in California, according to the particular statutes of that state, and of states with like statutes, and by reference to *Cooper* v. *Reynolds,* 10 Wall. 308, 321, involving a case under the laws of Tennessee, where as under our statute an attachment of real estate without personal service upon the defendant furnishes sufficient ground of jurisdiction to authorize a judgment binding upon the attached property. Section 9, chapter 106, of our Code, gives a lien on personal property and real estate levied on from the time of its suing out of the same, and section 20 thereof, authorizes the court, if the claim of the plaintiff be established, to give judgment or decree for him and to order a sale of the real or personal property attached without the award of any supplementary or other writ of execution. And as said before, the very purposes of the bills filed in Monongalia County were not only to obtain liens by attachment, but decrees of sale also of the lands attached to satisfy the debts sued for. Certainly the court under our statute not only acquires jurisdiction over the property attached to establish and adjudge liens thereon, but to proceed in the same suit to decree a sale thereof, and necessarily authority and dominion over it to effectuate the objects and purposes of the suit, and such power and jurisdiction over the res or subject matter of the suit must necessarily bring the attached property under the exclusive jurisdiction and dominion of the court with power not only to make sale thereof, but to give title thereto and possession to the purchaser.

Under our law, therefore, there is practically no distinction between this sort of mesne process and final process of execution. By the one as well as by the other the court acquires the custody and dominion over real as well as personal property, with the right to protect that custody and possession against the encroachment of any other court of coordinate or concurrent jurisdiction. For this proposition there is a long line of state and federal decisions. *State* v. *Fredlock, supra; Covell* v. *Heyman, supra; Taylor* v. *Carryl,* 20 How. 583; *Freeman* v. *Howe, supra; Hagan* v. *Lucas,* 10

Pet. 400; *Krippendorf* v. *Hyde,* 110 U. S. 276; *Heidritter* v. *Elizabeth Oil-Cloth Co.,* 112 U. S. 294, 301; *Shields* v. *Coleman, supra; Farmers Loan & Trust Co.* v. *Lake Street El. R. Co., supra.* In *Beardslee* v. *Ingraham, supra,* following the federal decisions referred to, and disapproving the contrary doctrine, the court says: "The purpose of the law is the same in both cases—to secure an appropriation of the attached property to the satisfaction of the plaintiff's claim in the event he recovers judgment. I cannot find in the law of attachment anywhere any indication of an intent to make this remedy available to a plaintiff in case of personal property, so as to prevent its seizure by subsequent proceedings in another court and to refuse the remedy in the case of real estate. No such intent can be reasonably inferred from the fact that the officer executing the process is not required or permitted to take actual possession of the land."

And it is well settled that the court first to obtain jurisdiction in such cases is entitled to hold it to the exclusion of all other courts until the objects and purposes of the suit have been fully accomplished. *Harkrader* v. *Wadley,* 172 U. S. 148, 164, and cases cited; *Gaylord* v. *Ft. Wayne, M. & C. R. R. Co.,* 6 Biss. 286, 291, 292, cited and approved in *Moran* v. *Sturges,* 154 U. S. 256, 271, and *Shields* v. *Coleman, supra.* See, also, *Wiswall* v. *Sampson,* 14 How. 52; *People's Bank* v. *Calhoun,* 102 U. S. 256, 262.

What then are the rights and remedies of respondents Hayden and others? They admit their right under section 23, of chapter 106, to intervene by petition in the causes pending in the circuit court of Monongalia County, but contend that that is not their exclusive remedy. They say that regardless of the rules and principles so well recognized and affirmed in the decisions referred to, they have the right to maintain their suit in Harrison County, and to enjoin the defendants therein from maintaining their suit in Monongalia County, upon several well recognized and established rules of equity cognizance: First, to avoid a multiplicity of suits; second, that the attachments in equity in Monongalia County, founded on purely legal demands, are absolutely void, and the court was without jurisdiction thereof; third,

because, as the bill alleges, the several causes of action and the attachments thereon in Monongalia County became merged in and superseded by the personal judgments against Thompson, alleged to have been subsequently obtained by petitioners and others in the Common Pleas Court of Fayette County, Pennsylvania.

In Ludington v. Hull, 4 W. Va. 130, the remedy given by the statute was held to be exclusive; but it is argued that Hatch v. Calvert, 15 W. Va. 90, in effect, overrules that case, and holds the contrary. However, the proceedings there involved were in the same, not a different court. But we do not understand the effect of the Hatch-Calvert Case to overrule the Ludington-Hull Case. In the former suit plaintiff, an endorsee of a note secured by a vendor's lien, had brought suit to enforce payment thereof by a sale of the land. The defendant answered that plaintiff was not a bona fide holder of the note, and alleged that before maturity of the note he had been served with an attachment in the same court brought by a creditor of the payee, which was still pending. The court held that the plaintiff in the equity suit might have intervened by petition in the attachment suit, but was not bound to do so, but might maintain his suit in equity upon bringing in as parties the adverse claimants. Whether in the same court such a bill might be maintained upon some equitable grounds we need not decide, for such a case is not presented. 1 Barton's Chancery Practice, page 668, is cited for the proposition that it could be, but no precedent is cited by the writer in support of his text. 1 Pom. Eq. Jur., section 261, is also cited as supporting the proposition.

Certainly the rules so invoked can not be allowed to overthrow the well established principle of the exclusiveness of the jurisdiction of the court first to acquire jurisdiction of the subject matter in litigation, so absolutely essential to the maintenance of that harmony and comity between courts of concurrent jurisdiction.

Next, can the jurisdiction of the Harrison County circuit court find safe anchorage in the alleged want of equitable jurisdiction by attachment of the circuit court of Monongalia County, of purely legal demands? We think not; we do not

think that under our statute there can be any doubt about the jurisdiction in equity by attachment upon claims arising out of contract; the practice has too long prevailed in this state to now question it. But conceding the correctness of respondents' contention, certainly that jurisdiction can not be collaterally attacked. The decree of the Monongalia court necessarily involves an adjudication that it had equitable cognizance of the causes and it is not void, even if erroneous. *St. Lawrence Co.* v. *Holt & Mathews,* 51 W. Va. 352; *Mellen* v. *Moline Malleable Iron Works,* 131 U. S. 352, 369; *Goodman* v. *Winter,* 64 Ala. 410, 432. As is said in the latter case: ''A court, having jurisdiction to decide whether the case presented by the pleading, in the mode prescribed by the constitution and the practice of the court, falls within its jurisdiction, may err in its judgments; but the judgment is not void; it is merely erroneous, and is conclusive until reversed or vacated.'' And as said in *Scott* v. *Runner,* 146 Ind. 13, 44 N. E. 755: ''The question here is not, as counsel seem to suppose, whether the judgment can be collaterally impeached, but it is whether the process of one court can be used to enjoin the final process of another of equal jurisdiction. Counsel for appellee say 'Why not, if the judgment on which that final process is based is void?' The answer is that that court had ample power to enjoin its own process without coming into conflict with the process of another court of equal power, and the presumption is that it will correctly administer the law if applied to, and if it does not, an appeal to a higher court will correct its errors, and thus avoid all conflicts between courts of co-ordinate power. Otherwise there must be even physical conflicts between courts of equal power in the state.''

Lastly, as to the theories of merger in the judgments in Pennsylvania, and marshaling of assets. We think the same answers may with like propriety be made to them as is made to the question propounded in the last preceding paragraph. These may be presented to the court having jurisdiction to hear and determine them.

Without doubt the circuit court of Harrison County has no jurisdiction to supersede the proceedings in Monongalia

County. In such cases the writ of prohibition is given as a matter of right by section 1, of chapter 110, of the Code.

*Writ awarded.*