## GEORGIA *v.* JESUP.

In a foreclosure suit, pending when the lands and property were in possession of a receiver, the State of Georgia, whilst declining to become a party, presented a petition asking that he be required to withdraw from the possession of a part of the property whereon executions for State taxes had been levied prior to his appointment. The petition was denied and dismissed. *Held,* that the action of the Circuit Court cannot be reviewed upon the appeal of the State, for the reason, if there were no other, that the order did not conclude the rights which she acquired by virtue of the executions, or of the levies made thereunder.

APPEAL from the Circuit Court of the United States for the Southern District of Georgia.

The suit, out of which this appeal arises, was commenced on the 15th of February, 1877, in the court below, by Jesup, a citizen of New York, and the surviving trustee in a mortgage, or deed of trust, executed on the 20th of December, 1867, by the Atlantic and Gulf Railroad Company, a Georgia corporation, conveying to trustees and the survivor of them its main line and certain branches, together with their appurtenances, rolling-stock, equipment, &c., respectively, in trust to secure the payment of bonds, in a large amount, made by the company, and payable on the first day of July, 1897, with interest semi-annually, at the rate of seven per cent per annum. The deed contained the usual provisions requiring the trustees, upon default in the payment of the stipulated interest, to enforce the security for the benefit of the bondholders. The bill asked for the appointment of receivers, and, accordingly, on the 20th of February, 1877, an order was made at chambers, appointing receivers of the entire property and effects embraced in the deed of trust or mortgage, who were invested with power, and charged with the duty, to manage and operate the same, subject to the orders and directions of the court. The receivers took possession, and the order of Feb. 20, 1877, was renewed and confirmed by an order of court entered on the 20th of April, 1877.

A supplemental bill was afterwards filed enlarging the scope of the suit and asking a decree of foreclosure and sale.

On the 3d of June, 1879, — the railroad and its branches,

with their respective appurtenances, being then in the actual possession of, and operated by, the receivers, under the direction of the Circuit Court of the United States, — the State of Georgia, by its attorney-general, presented a petition, stating that, prior to the appointment of the receivers, executions had issued from the office of its comptroller-general against the railroad company for taxes, alleged to be due the State, the validity of which taxes was contested by the company, and the issue arising thereon was then pending before the courts of the State ; that two of such causes — those involving the validity of the taxes for the years 1874 and 1875 — were taken by the corporation upon writ of error to the Supreme Court of the United States, in which court, at its [then] last term, a judgment was rendered sustaining the right of the State to the taxes in question ; that executions were also issued by the State against the company for the years 1876, 1877, and 1878, but as the grounds of defence were the same in each, the latter were allowed to rest and abide the decision in the two former causes, except that the execution for 1876 was in the hands of the sheriff, and had been levied upon certain property of the company before the appointment of the receivers in the foreclosure suit.

The prayer of the petition was that the State be allowed to establish these facts by reference to the records and proceedings in this cause, and also by the records and proceedings in the State courts and the Supreme Court of the United States, " for the purpose, and the purpose alone, of showing, as the State claims, that this honorable court has no jurisdiction under the law, by its process of the appointment of receivers or otherwise, to hinder, delay, or prevent the execution of the process provided by the law of the State for the collection of its revenue." " The said State of Georgia," the petition proceeds, " in obedience to that comity and respect that should govern her courts towards those of another concurrent jurisdiction, and to promote that harmony, which should ever prevail between herself, as one of the members of this Union, and the Federal government, respectfully insists that she cannot be required, in order to obtain her rights in the premises, to become a party complainant or defendant in the litigation now

pending before this honorable court, because, as she maintains: 1. This court has no jurisdiction, by the powers of injunction or otherwise, to hinder, delay, or prevent the collection of her revenue. 2. As the record shows that certain executions had been levied by the sheriff in obedience to process from the State courts, upon which issues had been joined by the defendant corporation, their jurisdiction could not be affected by a suit filed subsequently in the courts of the United States, [and] the appointment of receivers and a sale by the latter jurisdiction would be inoperative and void. 3. It is against public policy to require a State, in the collection of her revenue, to await the slow and tedious process necessary to determine the numerous issues made in this cause between private litigants." The prayer of the State was that the court pass such an order as would fully protect its rights in the premises.

The record contains no part of the proceedings in the causes in the State courts to which the State's petition referred. All that it contains in the way of documents or papers relating to taxes against the company are certain executions from the office of the Comptroller-General of Georgia, with the returns thereon, viz.: An execution for the taxes of 1874, amounting to $32,764.10, returned by the sheriff, levied Oct. 6, 1874, "upon lots number 23 and 24, Atlantic ward, city of Savannah, county and State aforesaid, and will sell the said described property on the first Tuesday in November, 1874, before the court-house door, in terms of the law;" an execution for the taxes of 1875, amounting to $8,754.55, returned levied Nov. 15, 1875, "upon the buildings known as the machine-shop, locomotive-house, and car-shop, situate, lying, and being at the Atlantic and Gulf Railroad depot in the city of Savannah, county and State aforesaid, and will advertise and sell the same, in terms of the law, the property of the defendant;" the execution for the taxes for 1876 for $9,080.31, $18,160.62 penalty for default in paying the tax, returned, as levied, Jan. 8, 1877, upon lots 23, 24, 33, and 36 in Savannah; the execution for taxes for 1877, amounting to $9,333.12, and $27,990.36 as a penalty for non-payment of taxes and costs, the last execution being returned, "property, by order and decree of the United States court, in the hands of receivers;" and execution

for taxes of 1878 for $7,070.26, and $21,228.78 as penalty for non-payment of taxes and costs. Upon this last execution no return appears to have been made.

On the sixth day of June, 1879, this order was made in the court below : —

" The State of Georgia, having petitioned for leave to proceed with certain executions for taxes, after argument and consideration, it is ordered and decreed that the said petition of the State of Georgia be denied, and the same is hereby dismissed."

On the same day a final decree of foreclosure was made, by which, among other things, it was, in substance, declared that the company was indebted to the State in the following principal sums for taxes : for 1874, $32,764.71 ; for 1875, $8,754.55 ; for 1876, $9,080.31 ; for 1877, $12,441.16 ; for 1878, $7,076.26 ; in all, the sum of $70,116.99, — the sums specified in the several executions for taxes, omitting the penalties claimed in those for 1876, 1877, and 1878. It was further declared that the company was liable for the principal of such tax as might be assessed by the comptroller-general of the State for the year 1879 ; that such taxes were prior to all other liens, except judicial costs, and should be paid out of the proceeds of sale and any balance of money and assets in the hands of the receiver, next after the payment of such costs ; and that neither penalties nor interest was due on the taxes for any of the aforesaid years.

Afterwards, on the 22d of August, 1879, the State presented to the court its petition for appeal, as follows : " The State of Georgia having filed a petition denying the jurisdiction of said Circuit Court of the United States, and claiming the right of said State to proceed with said executions, notwithstanding the property of said defendant corporation was in the possession and control of said court, through receivers appointed thereby, and the said Circuit Court having passed a decree, so far as the rights and claims of said State in the premises were concerned, denying and refusing said claim set up, and said State of Georgia, being advised that she has a good and valid cause of appeal, now comes . . . and prays this honorable court to grant an appeal in said cause to the Supreme Court of the

United States, on such terms and conditions as required by law." The appeal thus prayed was allowed.

*Mr. Clifford Anderson*, Attorney-General of Georgia, *Mr. Robert N. Ely*, and *Mr. Robert Toombs* for the appellant.

*Mr. Walter S. Chisholm* and *Mr. Robert Fallegant*, contra.

MR. JUSTICE HARLAN, after stating the facts, delivered the opinion of the court.

It does not seem incumbent upon this court to determine some of the questions, however important or interesting as abstract propositions, which counsel have pressed upon its attention. The case, as presented by the record, is within a very narrow compass, as is evident from the statement, already made, of the history and nature of the litigation out of which the present appeal arises.

The action of the court below is assailed by the State upon numerous grounds, separately stated in the assignment of errors. They are, however, all comprehended in the general proposition that the court erred in denying and dismissing the State's petition, filed June 3, 1879, thereby, it is claimed, adjudging that the sheriff could not, pending the possession and control by the receivers of the property, rightfully proceed with the executions for taxes; and in decreeing that the State is not entitled to penalties on its taxes for the years named in the final decree of foreclosure.

Touching the first of these propositions, it may be observed that if it was not a matter wholly within the discretion of the Circuit Court to permit the State to become a party to the foreclosure suit, it is clear that the State did not ask to become, nor was it in any form made, a party to that suit. It is equally clear that it could not have been made a party without its consent. While questioning with great distinctness of language the jurisdiction of the Circuit Court to take possession, by its receivers, of the property previously levied on in satisfaction of the several executions for taxes, the State avowed its unwillingness to submit its rights, in the matter of taxes, to the adjudication of any court of the United States. It, therefore, assumed such a position with reference to the foreclosure suit, that, while asking an order to be entered discharging the re-

ceivers as to the property levied on, and as to that proposed to be levied on for taxes, it would not be bound by any ruling the court might make. Still, a proper respect for the State seemed to require that the court should, in some form, indicate its opinion touching the formal suggestion that it had overstepped the limits of its jurisdiction, accompanied by a request that the court would revise its proceedings, and not allow the sheriff, having in his hands executions for taxes, to be embarrassed by the actual possession and control, by the receivers of the Circuit Court, of the property of the railroad company. The court below was of opinion that it had jurisdiction to do what had been done, and that it ought not to make any such order as that suggested by the State. But it nevertheless directed that the principal sums, claimed by the State for taxes, should be paid out of the proceeds of the sale of the mortgage property, next after paying judicial costs. It declined to make any provision for the payment of penalties or interest upon taxes. The record shows that the principal sums declared to be due the State have been received by it. The action of the Circuit Court was based in part upon what were regarded as the settled doctrines of the Supreme Court of Georgia, in respect of the right, under execution, in the ordinary form, and not specially moulded for that purpose, to seize and sell, at different sales, separate portions of a railroad, operated under franchises conferred by the State for purposes of travel and transportation. Without stopping to consider those or any other questions of law supposed to be raised by the State's petition, it is sufficient to say that the order, denying and dismissing that petition, is not one which the State can ask this court to review upon its appeal; this, for the reason already indicated, if there were no other, that the order did not conclude the State — it being no party to the suit — as to any right acquired in virtue of the executions for taxes. It was not an adjudication or judicial determination of those rights as between the State and the parties to the foreclosure suit. If, by law, the levies, in behalf of the State, were valid to the extent of creating a prior lien in its favor for taxes, or for the penalties or interest thereon, — as to which questions we express no opinion, — that priority was not affected or displaced by the subsequent possession of the prop-

erty by the receivers in the foreclosure suit. In no legal sense has the State been injured by the order dismissing its petition. It may not, therefore, claim, as matter of right, that this court shall, upon this appeal, review the action of the court below in declining to surrender possession of the property covered by the levies under the executions for taxes.

In reference to that part of the final decree of foreclosure, declaring, as between the parties before the court, that the State was not entitled to penalties or interest on its taxes, we remark, that if the State, not being a party to the suit, could have appealed therefrom, it has not done so. The petition of Aug. 22, 1879, plainly imports that the appeal prayed for was only from the order of June 6, 1879, denying and dismissing the petition of June 3, 1879. It is, therefore, not competent for this court, upon the present appeal, to review that portion of the final decree relating to penalties and interest on taxes. Whether the State is concluded by any action subsequently taken by it under that decree, or whether the State was, or is, entitled to penalties and interest on its taxes, are questions which do not arise upon this appeal, and are not intended to be decided.

For these reasons the decree must, on this appeal, be

*Affirmed.*