In re HALL & STILSON CO.

(Circuit Court, S. D. California. April 8, 1896.)

No. 647.

1. COMITY—COURTS OF CONCURRENT JURISDICTION—SEIZURE OF PROPERTY.
The rule of comity which forbids the seizure of property, subject to the jurisdiction of one court, by another court of concurrent jurisdiction, applies only where there is actual or constructive possession of the property by the former court.

2. ATTACHMENT OF REAL PROPERTY—EFFECT—POSSESSION OF COURT.
The levy of an attachment upon real estate gives to the court from which the process issues neither actual nor constructive possession of the property, but only creates a lien thereon in favor of the attachment creditor.

3. RECEIVERSHIP—LEAVE TO SELL UNDER EXECUTION.
Where real property, under attachment upon process from a state court, is taken into the possession of a receiver of a federal court, leave should not be granted by the latter court to sell such property under execution in the attachment suit, if the property is not ample to meet all claims upon it, or if the condition of the title is such that the property would be likely to be sacrificed if sold before the title is cleared up by a decree.

Paris & Allison, E. B. Stanton, and Hatch, Miller & Brown, for petitioner.

Anderson & Anderson and Gardiner, Harris & Rodman, for interveners Wood and others.

H. C. Dillon, for receiver.

Allen & Flint, for complainant.

Clarence A. Miller, William Chambers, W. J. Hunsaker, and Miller, Wynne & Miller, for defendants.

WELLBORN, District Judge. This is a petition by the Hall & Stilson Company, a corporation, for an order authorizing the sheriff of the county of San Bernardino, state of California, to levy an execution upon certain real estate, and 38 ounces of amalgam, in said petition described and mentioned, and being the property of said Vanderbilt Mining & Milling Company. The pertinent facts are that on the 23d day of February, 1895, petitioner, the Hall & Stilson Company, commenced an action in the superior court of said county against the Vanderbilt Mining & Milling Company, a corporation, on an indebtedness of $5,165.83, besides interest, and that on said day a writ of attachment was issued out of said superior court, which, on the same day, was levied upon said real estate and amalgam, the latter being taken into the custody of the sheriff; that afterwards, on the 13th day of June, 1895, judgment was recovered by the plaintiff in said action for the amount above named; that on or about the 18th day of June, 1895, in a suit pending in the United States circuit court for the Southern district of California, wherein Henry King Whittle is plaintiff, and the said Vanderbilt Mining & Milling Company and others are defendants, W. N. Crandall was appointed receiver of all the property of the said Vanderbilt Mining & Milling Company; that said Crandall, as such receiver, took and now holds, possession of said real estate, while said sheriff has possession of the amalgam. Petitioner asks for an order permitting the levy of its execution upon said property.

The amalgam being personalty, and possession of the same having been taken by the sheriff under state process, this court cannot, through its receiver, or in any other manner, rightfully interfere with said property while such possession continues. Hagan v. Lucas, 10 Pet. 400; Taylor v. Carryl, 20 How. 583; Freeman v. Howe, 24 How. 450; Ableman v. Booth, 21 How. 506; Ex parte Dorr, 3 How. 104; Peck v. Jenness, 7 How. 624; Slocum v. Mayberry, 2 Wheat. 1; Covell v. Heyman, 111 U. S. 176, 4 Sup. Ct. 355. With reference to the other property the question to be determined is whether or not, having been attached as real estate, under process from the state court, it could thereafter be lawfully seized by the receiver of this court. This question involves two others: First. What relation, according to the rule of comity, must one court sustain to property in order to preclude lawful seizure of the property by another court of concurrent jurisdiction; or, more specifically, is possession of the property by the former court an essential constituent of the rule? Second. Does a state court in California, by attachment of real estate, acquire possession, actual or constructive, of the property, or does the levy of the attachment merely impose a lien upon the property attached? With reference to the first of these two questions, the supreme court of the United States has enunciated the controlling principle, as follows:

"That principle is that, whenever property has been seized by an officer of the court by virtue of its process, the property is to be considered as in the custody of the court, and under its legal control for the time being; and that no other court has a right to interfere with that possession unless it be some court which may have a direct supervisory control over the court whose process has first taken possession, or some superior jurisdic-

tion in the premises. This is the principle upon which the decision of this court rested in Taylor v. Carryl, 20 How 583, and Hagan v. Lucas, 10 Pet. 400, both of which assert substantially the same doctrine. A departure from this rule would lead to the utmost confusion, and to endless strife between courts of concurrent jurisdiction deriving their powers from the same source. But how much more disastrous would be the consequences of such a course in the conflict of jurisdiction between courts whose powers are derived from entirely different sources, while their jurisdiction is concurrent as to the parties and the subject-matter of the suit. This principle, however, has its limitations; or, rather, its just definition is to be attended to. It is only while the property is in possession of the court, either actually or constructively, that the court is bound or professes to protect that possession from the process of other courts. Whenever the litigation is ended, or the possession of the officer or court is discharged, other courts are at liberty to deal with it according to the rights of the parties before them, whether those rights require them to take possession of the property or not. The effect to be given in such cases to the adjudications of the court first possessed of the property depends upon principles familiar to the law; but no contest arises about the mere possession, and no conflict but such as may be decided without unseemly and discreditable collisions." Buck v. Colbath, 3 Wall. 334.

The above quotation not only implies, but expressly declares, that the rule of comity forbids the seizure of property by a competent court only when the property is in the possession, actual or constructive, of another court of concurrent jurisdiction. Again, in the case largely relied on by petitioner, the court enunciates the rule of comity, as follows:

"Property thus levied on by attachment or taken in execution is brought by the writ within the scope of the jurisdiction of the court whose process it is, and as long as it remains in the possession of the officer it is in the custody of the law. It is the bare fact of that possession under claim and color of that authority, without respect to the ultimate right, to be asserted otherwise or elsewhere, as already sufficiently explained, that furnishes to the officer complete immunity from the process of every other jurisdiction that attempts to dispossess him." Covell v. Heyman, 111 U. S. 179, 4 Sup. Ct. 355.

Here, again, is an emphatic declaration that possession is an essential, and the main, constituent of the rule of comity. In still another case the reason of the rule is thus stated:

"Since, then, property in the hands of an officer of a court under legal process is to be considered as in the custody of the court, the officer would clearly have no right to surrender it without the order of the court to whom he owes obedience; and therefore an attempt of an officer of an alien jurisdiction to take the property out of the possession of the officer holding it must, inevitably, either prove futile, or lead to a forcible collision. Would the officer in possession be justified in surrendering the property at the mandate of a court foreign to him, and without any power whatever to give him protection against the orders of his own court? Would it not be his duty to resist by force the attempt or an officer of a different jurisdiction to take the property from his custody? Can the officer in possession be required to determine for himself, in advance of the judgment of his own court, and of the court from which the writ of replevin issues, the right of the plaintiff suing out a replevin from an alien jurisdiction to the property in dispute, and the authority of the officer serving the writ of replevin to seize and take the property? And can an officer be adjudged in contempt, and punished for his disobedience to the process of an alien jurisdiction, while acting in obedience to the command of his own court, in refusing to deliver up property which he holds as the mere custodian of that court?" Senior v. Pierce, 31 Fed. 629, 630.

The reasoning of this extract unanswerably sustains what has already been said in reference to the matter of possession. Petitioner, however, insists, that the distinguishing feature of the rule of comity is, not the possession of the property by the court, but the jurisdiction of the court over the property. Probably there can be found in some of the cases isolated expressions, which give countenance to this contention, but it will not bear the test of careful investigation. Wherever, in such cases, the word "jurisdiction" is employed in this connection, the context, I think, will disclose that it is used synonymously with "possession." The authority invoked by the petitioner on this point is Cooper v. Reynolds, 10 Wall. 308–321. In that case it is to be observed that the principle of comity was not in any way involved, nor even remotely considered, and that the only question before or decided by the court was that, under the laws of Tennessee, an attachment of real estate, without personal service upon the defendant, furnishes sufficient ground of jurisdiction to authorize a judgment binding upon the attached property. This rule of law, however, is very different from petitioner's contention that, under the laws of California, real estate, when attached by one court, cannot, without a violation of the rule of comity, be seized under process from any other court. A court may, without personal service on the owner, acquire such jurisdiction over specific property as will support a judgment against the same, and yet not obtain that possession, actual or constructive, of the property, which would preclude its seizure by another court. This situation may arise in a suit to foreclose a mechanic's or other statutory lien, or a mortgage; and that in the latter case jurisdiction may exist without possession is fully confirmed by the fact that the law provides that the court may, in certain exigencies, and through the instrumentality of a receiver, take the mortgaged property into its custody and possession. So, too, as is the case here, there may be jurisdiction without possession, where an attachment is levied upon real estate. In this connection it is perhaps proper to say that I have not overlooked the rule that, "when two courts have concurrent jurisdiction over the same-subject-matter, the court in which the suit is first commenced is entitled to retain it." This rule, with its exceptions and qualifications, is fully discussed in Sharon v. Terry, 36 Fed. 337. No such point, however, is involved here. The litigation in this court is a suit in equity to determine conflicting claims and liens to and upon the property, while the litigation in the state court was not only between different parties, but simply an action to recover judgment on a money demand. So that the rule above stated, which rests upon prior jurisdiction, has no relevancy whatever to the pending application.

As to the first of the two questions above stated, my conclusion is that the rule of comity applies only where there is actual or constructive possession by the court of the property involved; or, adopting the definition of Justice Miller, in Buck v. Colbath, supra:

"It is only while the property is in possession of the court, either actually or constructively, that the court is bound or professes to protect that possession from the process of other courts."

This brings me to the second question stated in the outset of this opinion, namely, whether or not the levy of an attachment upon real estate in California gives to the court from which the process issues possession, actual or constructive, of the property. My attention has not been called to any express adjudication of this question by the supreme court of California. Pertinent decisions, however, by the highest courts of other states are numerous, and generally, if not uniformly, to the effect that by an attachment of real estate a lien thereon is secured, but that no sort of possession is acquired by the officer serving the writ. In New Hampshire it has been held that:

"Where real estate is attached, the officer serving the writ gains no right of property in or possession of the real estate by the attachment." Scott v. Print Works, 44 N. H. 507.

And, again, that:

"By the operation of the attachment thus provided for and regulated, if lands were attached, the debtor or other person in possession is not disturbed in his possession until the levy of the execution; but the attachment fastens itself, as a charge or incumbrance, upon the land, from the time it is made; so that any subsequent purchaser, even before a levy, can only take subject to the incumbrance of the attachment, nor can any other creditor, by a levy of an execution, avoid the operation of this charge or incumbrance. The plaintiff in the action gains a priority of right, from the date of his attachment, to have satisfaction of his claim out of the estate attached, in case he shall obtain a judgment. In an attachment of personal estate, the sheriff, upon the service of the writ, takes the possession of the goods, and acquires thereby a special property in them for the purpose of enforcing and protecting the attachment, and the rights of all concerned in the attachment and in the goods. He is then accountable, both to the plaintiff and to the defendant, for the disposition of them. If the plaintiff obtains a judgment, they are seized and sold upon the execution. If he fails, they are returned to the debtor. Some person may become accountable for them, and they may thus go back into the hands of the debtor, and the attachment be dissolved; the sheriff having, by means of a receipt for them, the security of some third person, which is in that case to be made available to the creditor. But if the attachment is not dissolved it fastens itself upon the goods as a charge or incumbrance, like the attachment upon real estate, and the avails of them are first to be applied to the satisfaction of the judgment when recovered. Subsequent attachments may be made upon them by the same sheriff, and where there are several attachments the attaching creditors have a right to priority of satisfaction, so far as those goods are concerned; not by priority of judgment, but by that of the attachment. Poole v. Symonds, 1 N. H. 292, 294; Bissell v. Huntington, 2 N. H. 142; Hackett v. Pickering, 5 N. H. 24; Kittredge v. Bellows, 7 N. H. 428; Clark v. Morse, 10 N. H. 238. Subsequent attachments may also be made of real estate, by the same or any other officer, with a like result as to priority of satisfaction." Kittredge v. Warren, 14 N. H. 522.

Now, if the levy of an attachment on real estate brought the property into the possession of the officer serving the writ, that possession would be exclusive, and no other officer could interfere with the property; yet, as above stated, subsequent attachments may be levied by different officers. From this it unavoidably results that an attachment of real estate does not bring the property into the custody or possession of the officer, but merely imposes a lien thereon.

### The supreme court of Missouri uses the following language:

"It is now contended by the plaintiff that the agreement to take judgments on the attachment suits and stay execution thereon had the effect of postponing the liens in those cases, and giving his judgment the priority. The attachment suits here operated on real estate, and the liens dated from the time of the levy. The levy was made on all the real estate owned by the defendant in the suits, and the voluntary withdrawal of the pleas in abatement simply allowed the judgments to be taken by default, and did not interrupt the continuity of the lien. Nor do we think the agreement for a stay of execution had the effect of postponing the lien, and giving a preference to the plaintiff's judgments. Had the subject of the levy been personal property, a different principle would govern, for it is held that where, in the case of personal property, a plaintiff directs an officer to hold up his execution, and not to sell or proceed to make the money until he shall give further orders, and until he shall find younger executions crowding in, such acts render the execution dormant and fraudulent as to subsequent executions. Field v. Liverman, 17 Mo. 218. But the distinction between liens in cases of real estate and personalty is palpable and well defined. In the one case the judgment confers a lien; in the other it arises out of the execution. Where an execution is levied on personal property, the property is thenceforth in the custody of the officer, and other parties are precluded from taking or intermeddling with it. If the plaintiff sees proper to direct the officer to hold it up, and not to proceed to satisfy the writ, junior judgment creditors may be kept out of their rights and retarded in their collections indefinitely. This would work a fraud which the law will not sanction. But in the case of real estate there can be no such hindrance. A junior judgment creditor, by the provisions of the statute, can levy his execution, and proceed to sell lands at any time; the sale being made subject to the prior lien." Ensworth v. King, 50 Mo. 482.

### In Vermont, the distinction between attachments of real and personal property is thus stated:

"In the attachment of personal estate the officer acquires a special property, and the right to its custody and possession. For any injury to it the right of action is in the officer, as, in any termination of the case, he is accountable for the property either to the creditor or debtor. That special property the officer may release, so as to destroy any lien upon the property created by the attachment. He may permit the possession of the property to remain with the debtor, in which case it can be held by a subsequent attachment, or a subsequent purchaser, free from any lien or claim of the officer upon it. His right over that property is independent of the creditor or debtor, as, in a given event, he is responsible for it to the debtor, and in another event to the creditor; and that right exists so long as that special property continues in him. But we apprehend a different rule applies in the attachment of real estate. When such attachment is made, the officer acquires no special property in the land. He is not required or authorized to take the possession of it, nor, in any event, is he accountable for the property, or for its rents, incomes, or profits. This agency and authority is terminated whenever his duties are performed, for which the process was put into his hands. The lien created by the attachment, whatever may be its character, is in the creditor, and he only can release or discharge it." Braley v. French, 28 Vt. 552.

### To the same effect, the supreme court of Massachusetts declares:

"The analogy between the attachment on mesne process of real and personal property, though designated by the same term, is very slight. The early history of attachments of personal property in this commonwealth, as a security for a debt to be recovered, and the original connection, or perhaps identity, of this process with the writ of distringas at common law, and the rules applicable to the latter process, can go very little way in aiding us to a right construction of the rules affecting an attachment of real estate. We must, therefore, be governed in the construction of these rules by usage and statute, the nature of the process, and the reasons upon which it is allowed.

The object of this process, as it is now regulated by usage and by statute, is to give to the creditor, upon the commencement of his suit, a lien upon the real estate of his debtor. It is a branch of that system of policy which charges the real estate of a debtor with the payment of his debts both during his life and at his decease. By the attachment, no estate passes, no interest vests in the creditor; neither the interest nor the possession of the debtor is divested; nor does the officer or creditor acquire any right to take the issues or profits. It constitutes a real lien which can be made available to the creditor only upon a compliance with various conditions, namely, that he shall recover a judgment in that suit. that he shall obtain no other satisfaction than by levying on the real estate, and that he shall make such levy within a limited time, and conform to the rules of law. In almost all these respects this process is distinguishable from an attachment of personal property, or distringas. In the latter the officer must take the goods into his own custody, otherwise the security would not be effectual. He must keep possession, because he is to stand responsible to the creditor if he recovers judgment, otherwise to the debtor. He has a special property, because this is necessary to enable him to defend his possession, and perform the duties which the law imposes on him. Most of these distinctions are founded on the locality, and consequently fixed and immutable character, of real estate. The acts of seisin and possession, therefore, necessary to give effect to an attachment of personal property, are wholly unnecessary in regard to real estate, and 'ad impossibilia seu vana lex non cogit.'" Taylor v. Mixter, 11 Pick. 346.

More strongly in point than any of the cases yet noticed is that of Oldham v. Scrivener, 3 B. Mon. 579. From the opinion in this case I extract the following:

"Oldham sued out an attachment in chancery on a bill filed under the statute of 1838 (Acts Assem. 1837-38, p. 212), and had it levied on a tract of land as the property of Scrivener. Also two other bills had been filed by other creditors to subject the tract to the satisfaction of their demands about the same time. Afterwards, and while those proceedings were depending, Oldham obtained a judgment at law for his debt, and sued out execution thereon, and had it levied on the land, and purchased it, and procured the sheriff's deed for the same. On the motion of Scrivener, the circuit court quashed the levy, sale, and sheriff's deed upon the sole ground that the proceeding was unauthorized and illegal because of the prior levy and pendency of the proceedings in chancery. We think the court erred in this order. Upon the levy of an attachment or execution on personal goods the officer seizes them and holds them in his custody, and they cannot be levied on, seized, or taken into possession by another officer. To allow this to be done would be to encourage conflicts and controversies between different officers, each contending for the possession of the property. * * * But real estate stands upon different ground. The officer has no right, upon the levy, to take possession of land. or to oust the occupant of his possession; nor has he the right to deliver the possession to a purchaser under his sale. * * *"

See, also, Saunders v. Insurance Co., 43 Miss. 593; 1 Wade, Attachm. §§ 164-251; Drake, Attachm. §§ 239, 240.

Upon the foregoing authorities there can be no doubt but that the levy of an attachment on realty simply creates a lien, and does not give to the officer levying the writ possession, actual or constructive, of the property. And such, I am satisfied, is the rule in California. Code Civ. Proc. Cal. § 537, is as follows:

"The plaintiff, at the time of issuing the summons, or at any time afterward, may have the property of the defendant attached, as security for the satisfaction of any judgment that may be recovered unless the defendant give security to pay such judgment," etc.

This lánguage shows clearly that the object of the attachment law is to provide the plaintiff means whereby he may obtain security for his debt. Section 542 of said Code prescribes the manner in which a writ of attachment shall be executed, and is as follows:

"Sec. 542. The sheriff to whom the writ is directed and delivered, must execute the same without delay, * * * as follows: (1) Real property standing upon the records of the county in the name of the defendant, must be attached, by filing with the recorder of the county a copy of the writ, together with a description of the property attached, and a notice that it is attached; and by leaving a similar copy of the writ, description, and notice with an occupant of the property, if there is one; if not, then by posting the same in a conspicuous place on the property attached. * * * (3) Personal property, capable of manual delivery, must be attached by taking it into custody. * * *"

Thus it will be seen that, in levying an attachment upon real estate, the officer does not take the property into his custody. The possession of the occupant is in no way disturbed by the levy. Such occupant retains the actual and exclusive possession of the property. Under these circumstances it is impossible for constructive possession to be in the officer making the levy, for, if this were so, the officer would necessarily hold in antagonism to the occupant, and thus there would be presented the anomalous and illogical situation of one person in actual possession, and another, claiming adversely, in constructive possession, of the same property, at the same time. Such a solecism cannot exist in law. Since, then, the idea of constructive possession in the officer levying an attachment upon real estate is wholly inconsistent with the unquestioned fact of the actual, uninterrupted possession of the occupant of the premises, it necessarily follows that the only acceptable theory as to the effect of an attachment of real estate is that the attachment simply imposes a statutory lien, just as a mortgage imposes a contractual lien. Again, where personal service is obtained on the defendant, as was done in the present case, the attachment is simply auxiliary to the main action, and in no wise necessary to the jurisdiction of the court. No order whatever is made by the court concerning the attached property, unless it be perishable; nor does the final judgment refer to it in any way, but the judgment, in form and substance, is the same as in cases where there is no attachment. This is also true of the execution. Furthermore, any number of attachments, all issued by different courts, may be levied by different officers upon the same real property, and no one of them will interfere with the others, for the obvious reason that each only creates a lien, and under none of them does the officer take possession of the property. Furthermore, when attached real property has been sold under execution on a money judgment, and deed made by the sheriff, the court cannot, in that suit, without some statutory provision for a writ of assistance, put the purchaser in possession, but resort must be had to another and separate action. Freem. Judgm. art. 350. This shows conclusively that the court has no custody of the property, for otherwise it would simply transfer its possession to the purchaser, and a separate action to recover possession would neither be necessary nor maintain-

able. The following cases from the supreme court of the United States are confirmatory of the conclusions reached in this opinion, viz. State of Georgia v. Jesup, 106 U. S. 458-464, 1 Sup. Ct. 363, and Wiswall v. Sampson, 14 How. 52. In the former case the state of Georgia had levied executions for taxes on certain real property of the Atlantic & Gulf Railroad Company, which property was afterwards taken possession of by a receiver appointed in a foreclosure suit in the United States circuit court against said company, wherein Jesup, surviving trustee, was plaintiff. The state of Georgia petitioned the circuit court for leave to proceed with said executions, which petition was refused, and the order of the court made therein as follows:

"The state of Georgia having petitioned for leave to proceed with certain executions for taxes, after argument and consideration it is ordered and decreed that the said petition of the state of Georgia be denied, and the same is hereby dismissed."

The supreme court, on appeal, affirmed the order, mainly on the ground that the state had not made itself a party to the suit; but in the opinion occurs the following language:

"If, by law, the levies in behalf of the state were valid to the extent of creating a prior lien in its favor for taxes, or for the penalties or interest thereon,—as to which questions we express no opinion,—that priority was not affected or displaced by the subsequent possession of the property by the receivers in the foreclosure suit. In no legal sense has the state been injured by the order dismissing its petition. It may not, therefore, claim, as a matter of right, that this court shall, upon this appeal, review the action of the court below in declining to surrender possession of the property covered by the levies under the executions for taxes."

The syllabus of the case is as follows:

"In a foreclosure suit pending in the circuit court, the mortgaged property being in possession of its receivers, the state of Georgia presented a petition, in which, declining to become a party to the suit, it asked that the receivers be required to withdraw from the possession of a part of the property in their hands, upon some of which executions for state taxes had been levied prior to their attachment. The petition was denied and dismissed. *Held*, that the action of the court could not be reviewed upon the appeal of the state for the reason, if there are no others, that the order did not conclude any right it had in virtue of the execution, or of the levies made thereunder."

Here was a direct holding of the United States circuit court, undisturbed on appeal to the supreme court, that the levy by a sheriff of an execution issued under state authority, and for taxes, did not preclude a subsequent seizure of the property by a receiver of said court.

In the other of the two cases last cited—Wiswall v. Sampson—the supreme court held that, where an execution issued out of the United States circuit court had been levied upon real property by the marshal, and subsequently thereto the same property was taken into the possession of a receiver appointed by a state court, and during the continuance of such possession sold by the marshal under said execution, the sale was absolutely null and void. The court says:

"The right of the petitioner, therefore, under his title, to the possession of the property as against the right of Wiswall under the proceedings in equity

and the decree in his favor would seem to be a question directly involved. The court so understood the issue, and passed upon it, holding, as we hold in this case, that the sale was illegal and void, having been made while the estate was in the possession and safe-keeping of the court of chancery."

This language implies, and the whole opinion seems to proceed upon the theory, that the possession of the receiver was rightful; or, in other words, that the prior levy of the execution by the marshal did not so bring the property into the custody of the law as to prevent its sequestration afterwards through the agency of the receiver.

The supreme court, discussing, in a later case, the question of actual possession as an element of the rule of comity, makes the following reference to Wiswall v. Sampson, supra:

"In this aspect the case is directly within the rule of decision established in Wiswall v. Sampson, 14 How. 52. That was a controversy as to the title to real estate, one party claiming under a sale upon execution issued on judgments rendered in the circuit court of the United States, the property being at the time of this sale in the possession of a receiver of a state court, under whose subsequent decree and sale the defendant claimed title. It is a significant fact in that case that at the time of the appointment of the receiver by the state court the executions upon the judgments had been issued and levied, and were a subsisting lien upon the premises." Heidritter v. Oil-Cloth Co., 5 Sup. Ct. 135.

My conclusion is that the levy of the attachment by the Hall & Stilson Company upon the real property of the Vanderbilt Mining & Milling Company did not so bring the property within the custody of the state court as to render unlawful its seizure by the receiver of this court.

It is undoubtedly true, as insisted by petitioner in its brief last filed, that the appointment of a receiver in this suit did not discharge its attachment, or displace the lien thereby acquired. On the contrary, in the administration of the property, this lien will be recognized and protected, according to its priority. It is also, doubtless, within the power of this court to grant to petitioner leave to proceed with the sale of the property under its execution; but I do not believe that, in view of the existing conditions, it would be right or proper for such leave to be now granted. The power and the duty of the court are indicated in the following quotation from Wiswall v. Sampson, supra:

"Neither do we doubt but that it is competent, and might, in some cases, be fit and proper, for the court, where the property in dispute is ample, and the litigation protracted, to permit the execution to issue, and compel the prosecuting creditor to pay off the judgment. 3 Beav. 428. But it is manifest that these proceedings in behalf of the prior incumbrancer should be under the control of the discretion of the court, as the condition of the title to the property may frequently be so complicated and embarrassed that, unless the sale was withheld until the title was cleared up by the judgment of the court, great sacrifice must necessarily ensue to the parties interested."

Two, at least, of these prerequisite conditions of leave to a judgment creditor to proceed under his execution, are wanting in the present case: First, that the property is ample to meet all the claims against it; second, that there are no complications or embarrassments as to the title which would prevent the full value of

the property being now realized at a forced sale. So far from these conditions being shown in the present case, it is doubtful whether the first exists, while, certainly, the latter does not; that is to say, it is questionable if the property, at forced sale, would bring enough to pay off all the creditors, while, unquestionably, the condition of the title is so complicated and embarrassed that, unless the sale be withheld until the title is cleared up by the decree, great sacrifice would necessarily ensue to the parties interested.

The petition will be allowed as to the amalgam and denied as to the other property.