INGRAHAM v. NATIONAL SALT CO.

(Circuit Court, E. D. New York. May 17, 1905.)

FEDERAL AND STATE COURTS—CONFLICT OF JURISDICTION—PRIOR ATTACHMENT BY FEDERAL COURT.

Plaintiff in an action in a federal court against defendant, a corporation, procured the issuance of an attachment, which was levied on real estate of the defendant. Pending the action, insolvency proceedings against defendant were instituted in a state court, which, through receivers, took possession of all of defendant's property, including that attached, and sold the same; the execution of a conveyance, however, having been deferred, for the convenience of the purchaser, until final settlement of the insolvent estate. Subsequently plaintiff recovered judgment in the federal court, and an execution was issued, under which the marshal advertised the attached property for sale. Thereupon the state court enjoined such sale in a suit instituted by its receivers against plaintiff and the marshal, in which the validity of the attachment was attacked. Held, that while, under the principle of certain decisions of the Supreme Court of the United States, the authority of the state court to deprive the federal court of control of its own process and to draw to itself the determination of the validity of the attachment lien was doubtful, where its own jurisdiction over the property was acquired after the lien attached, yet in view of other federal decisions holding that the levy of an attachment on real estate does not give the court issuing the attachment either actual or constructive possession of the land, nor prevent its subsequent seizure by a court of another jurisdiction, the federal court would not enjoin the receivers from further prosecuting their suit, but would await the final determination thereof by the state tribunals.

[Ed. Note.—Conflict of jurisdiction between state and federal courts, see note to Louisville Trust Co. v. City of Cincinnati, 22 C. C. A. 356.]

On Motion for Injunction.

George S. Ingraham, in pro. per.
Putney, Twombly & Putney, for receiver.

THOMAS, District Judge. The plaintiff, on July 16, 1901, commenced this action to recover money alleged to be due by virtue of certain instruments issued by the defendant, and on August 9, 1904, obtained a judgment against the defendant for $14,821.15. On November 6, 1901, a warrant of attachment herein was issued, a notice of which was in November, and, as amended, in December, 1901, filed in the office of the clerk of the United States District Court for the Western District of New York, located at the city of Buffalo, in the county of Erie. After the recovery of judgment an execution was issued out of this court on February 6, 1905, to the United States marshal for the Western District of New York, who, pursuant thereto, advertised for sale, on April 4, 1905, certain real property owned by the defendant at the time of filing such attachment, and situated in the county of Wyoming. But it appears that on September 29, 1902, in a suit in the Court of Chancery of the state of New Jersey, a decree was entered against the defendant herein, adjudging it insolvent, and appointing certain persons receivers to wind up its affairs and distribute its property to the persons proven entitled thereto; and on October 1, 1902, in a similar action, the Supreme Court of the state of New York appointed the

same persons ancillary receivers for the purpose of aiding the courts of New Jersey in marshaling and distributing the property of the defendant. Thereafter the receivers, enabled so to do in such actions, on May 25, 1904, sold the property of the defendant, including the real property alleged to be under the levy of the attachment in this action, surrendered possession to the purchaser, and retained title pending the payment of the purchase price pursuant to an order of the state court, which sale was confirmed July 27, 1904. The receivers undertook to sell the property free from all incumbrance, pursuant to the decree of the state court that "the proceeds of the sale thereof to stand in the place and stead of the property, and the lien of such incumbrance to attach to such proceeds." The purchaser of the property paid in cash $19,386.75, and on July 29, 1904, obtained an order in the state court, whereby the receivers were directed to allow the purchaser, as part payment on account of the purchase price of the property so purchased by him, the balance ($184,278.12) of the dividend on indebtedness of the defendant to him in the sum of $283,504.60, and all further dividends to be declared on his said claim, and it appears that the transfer of title is awaiting the declaration of a final dividend. On April 3, 1905, the Supreme Court of the state of New York denied a motion made in the suit in that court to enjoin the marshal from selling the property under the execution issued out of this court in this action, and the ground of the decision was that "neither of the parties sought to be restrained is a party" to the suit in the state court. Thereafter the receivers filed a bill in the Supreme Court of New York against the marshal and the plaintiff herein, to enjoin sale by the marshal, and thereupon such court, upon motion, stayed the sale. The plaintiff herein made the present motion in this action at law, in which the National Salt Company is the sole defendant, to enjoin the receivers from taking or continuing proceedings to enjoin the sale of the property by the marshal.

It will be observed that the plaintiff's execution lien is wholly dependent for priority upon the validity of the lien of the attachment; that such attachment lien, if valid, is prior in time to the suits in the state courts; that the receivers have long since sold the property, and parted with possession thereof, and are merely delaying the delivery of the formal deed to convenience the purchaser in paying the purchase price, and not for the interests or purposes of the suits in the state courts, and that such convenience, unless interrupted, will continue until the liquidation of the complicated and extensive affairs of the National Salt Company shall have been effected. Meantime, awaiting such convenience of the purchaser, the power of this court to enforce its judgment by execution based upon a prior attachment lien is suspended. But counsel appearing herein for the receivers, not parties to this action, urge (1) that the attachment lien is invalid, because notice of the attachment was not filed in the office of the clerk of Wyoming county, where the property is situated, but in the clerk's office of the Circuit Court of the United States for the Western District of New York, which is the district of the Second Circuit wherein the county of Wyoming is;

(2) that, even if the lien of the attachment be valid, it cannot be enforced against the property, but the receivers, in behalf of the state court, having first taken the land into possession, are by aid of that court empowered to sever the lien from the property, adjudge its validity, and, if found valid, transfer it to the proceeds of the sale of the property, and direct its payment therefrom, if such proceeds be sufficient, and that the federal court's control of its own process is lost.

The first question is whether the levying of the attachment upon the land is such seizure by this court as to give it priority over the state court, through its receivers thereafter appointed. The attachment, when levied, laid a lien upon the land, the further enforcement of which was conditioned upon the attaching creditor obtaining a judgment for damages whereon an execution could be issued to the marshal. The marshal did not take the land into his actual possession, for only a purchaser after sale on the execution could gain such possession, after the time of redemption had expired, and in default of such redemption. In this respect the levying of an attachment on land differs from an attachment of personal property, of which the attaching officer takes such possession that the property is actually or constructively in the possession of the court. In Re Hall & Stilson Co. (C. C.) 73 Fed. 527, it was held that the levy of an attachment upon real estate gives to the court from which the process issues neither actual nor constructive possession of the property, but only creates a lien thereon in favor of the attachment creditor; and that where real property, under attachment upon process from a state court, is taken into the possession of a receiver of a federal court, leave should not be granted by the latter court to sell such property under execution in the attachment suit, if the property is not ample to meet all claims upon it, or if the condition of the title is such that the property would be likely to be sacrificed if sold before the title is cleared up by a decree. The consequence of the holding, as applied to the case at bar, is that a state court may, in a suit later begun, appoint receivers of the land previously attached in an action in the federal court, draw to itself the power to stay the enforcement of prior processes of the federal court, and decree their validity or invalidity, or postpone the satisfaction of decrees by virtue of such attachment to await the disposition of the property for the purposes for which it was seized by the state court. Hence all levies on land by attachment or execution become subjected to the after-acquired jurisdiction of another tribunal. The federal court in the action at bar appointed and appropriated the land to the payment of such judgment for money damages as it should direct to be entered. The state court has intervened, and stayed such payment until it shall have determined the validity of the attachment and the levy thereunder, whereupon, according to the receivers' contention, it may distribute the property of the judgment debtor to whomsoever it finds entitled to the same. If the state court has this power, the federal court is deprived not only of the control of its processes, but also of power to determine whether they are valid and may be enforced. Thus the

court of one sovereignty is compelled to yield its powers to the commands of a foreign tribunal, taking later cognizance of the property that has been subjected to the exercise of the powers of this court.

The Supreme Court of the United States, in Freeman v. Howe, 65 U. S. (24 How.) 450, 458, 16 L. Ed. 749, referred to the opinion expressed by Chancellor Kent in his Commentaries (volume 1, p. 410), which is as follows:

"If the officer of the United States who seizes, or the court which awards the process to seize, has jurisdiction of the subject-matter, then the inquiry into the validity of the seizure belongs exclusively to the federal courts. But if there be no jurisdiction in the instance in which it is asserted—as if a marshal of the United States, under an execution in favor of the United States against A., should seize the person or property of B.—then the state courts have jurisdiction to protect the person and the property so illegally invaded."

And said:

"The error into which the learned chancellor fell, from not being practically familiar with the jurisdiction of the federal courts, arose from not appreciating, for the moment, the effect of transferring from the jurisdiction of the federal court to that of the state the decision of the question in the example given; for it is quite clear, upon the principle stated, the jurisdiction of the former, and the validity and effect of its process, would not be what the federal, but state, court might determine. No doubt, if the federal court had no jurisdiction of the case, the process would be invalid, and the seizure of the property illegal, for which the aggrieved party is entitled to his remedy. But the question is, which tribunal, the federal or state, possesses the power to determine the question of jurisdiction or validity of the process? The effect of the principle stated by the chancellor, if admitted, would be most deep and extensive in its operation upon the jurisdiction of the federal court, as a moment's consideration will show. It would draw after it into the state courts not only all questions of the liability of property seized upon mesne and final process issued under the authority of the federal courts, including the admiralty, for this court can be no exception, for the purposes for which it was seized, but also the arrests upon mesne, and imprisonment upon final, process of the person in both civil and criminal cases, for in every case the question of jurisdiction could be made; and until the power was assumed by the state court, and the question of jurisdiction of the federal court was heard and determined by it, it could not be known whether in the given case it existed or not. We need scarcely remark that no government could maintain the administration or execution of its laws, civil or criminal, if the jurisdiction of its judicial tribunals were subject to the determination of another."

The instance suggested by Chancellor Kent, and adverted to by the court in the language stated, referred to a direct intervention of a state court to pass upon the validity of the seizure of property under process of the federal court, but does not necessarily involve the question whether the attachment of land is such seizure as precludes another court from taking later possession of such property and administering it for its own purposes. It will be observed that in the opinion there is no disclaimer of the rule laid down in Wiswall, Plaintiff in Error, v. Sampson, 55 U. S. (14 How.) 52, 14 L. Ed. 322. There Sampson in an action in ejectment claimed the right to the possession of land by virtue of judgments entered in 1840, levies by execution thereon in February and April, 1845, sale on July 7, 1845, on such execution, and deed executed August 13, 1845, to the purchaser. The defendant claimed under a deed given on the sale of the land in 1847, by a receiver, who had been in pos-

session since June 27, 1845, by virtue of a decree in chancery rendered in April, 1845, on a bill filed by Wiswall in 1843 against Ticknor, the judgment debtor in all the judgments, and one Day, to set aside a conveyance from Ticknor to Day by deed dated April 28, 1840, as fraudulent against a judgment recovered by Wiswall against Ticknor June 14, 1842. It will be observed that the judgments of 1840, upon which Sampson claimed, were prior to the filing of the bill in chancery in 1843; that the levy in February and April, 1845, was subsequent to the filing of the bill, but prior to the appointment of the receiver in June, 1845. In the ejectment action the Supreme Court held that Sampson obtained no title, as at the time of the levy and sale under which he claimed the land was in the custody of the Court of Chancery, of which the judgment creditor had notice, and that the proper proceeding was for the judgment creditor to apply to the Court of Chancery for the protection of his interests. This case differs from that at bar in this: that in Wiswall v. Sampson there was only a prior judgment lien on the land, attaching at the time of its entry; in the present case there is a judgment lien, enforceable by execution against the land by virtue of the prior attachment, assuming that the same was levied regularly. Nevertheless, if the levy of the attachment only creates a lien, and does not give the court control of the subject of the levy, the present case falls under the holding in Wiswall v. Sampson, and such is the decision in Re Hall & Stilson Co., supra.

The question is whether, if in Wiswall v. Sampson it had appeared that the levy of the judgment had been prior to the filing of the bill under which the receiver was appointed, the court would have still held that such levy was interrupted by the filing of the bill and the appointment of the receiver. If such would have been the decision, then the holding clearly would be that, after land has been levied upon by process issued out of the federal court, the state court may seize and administer the land in equity, and that the attaching creditor may proceed no further. As already said, such a holding enables the foreign tribunal, by its later action, to enjoin the enforcement of the processes of this court earlier in date of issue and levy, and require federal suitors, who have obtained such prior rights, to submit their validity and right of enforcement to another independent court. In the Wiswall Case the decision seems to regard chiefly the fact that a receiver was appointed before the sale. The opinion states:

"At the time, therefore, of this sale, the receiver was in the possession of the premises under the decree of the Court of Chancery; in other words, the possession and custody of them were in the Court of Chancery itself (as the court is deemed the landlord) to abide the final decree to be thereafter rendered in the suit pending. * * * When a receiver has been appointed, his possession is that of the court, and any attempt to disturb it without the leave of the court first obtained will be a contempt on the part of the person making it."

But it is further said:

"The settled rule also appears to be that, where the subject-matter of the suit in equity is real estate, and which is taken into the possession of the court pending the litigation by the appointment of a receiver or by sequestration, the title is bound from the filing of the bill."

Therefore the holding essentially was that the filing of the bill suspended the power of Wiswall to levy upon the property and sell the same, and that the subsequent appointment of the receiver related to the time when the bill was filed. The court did not decide that Wiswall would not have had power to sell had his levy preceded the filing of the bill.

In Heidritter v. Elizabeth Oilcloth Co., 112 U. S. 294, 303, 5 Sup. Ct. 135, 139, 28 L. Ed. 729, the opinion referring to Wiswall v. Sampson, states:

"It is a significant fact in that case that at the time of the appointment of the receiver by the state court the executions upon the judgments had been issued and levied, and were a subsisting lien upon the premises."

But the opinion does not advert to the fact that the bill in which the receivers were appointed was filed before the executions upon the judgments were levied.

In Re Hall & Stilson Co., supra, the levy of the attachment issued from the state court did precede the seizure of the property by the federal court, and yet it was held that the property could not be sold while the federal court retained such possession.

In State of Georgia v. Jesup, 106 U. S. 458, 1 Sup. Ct. 363, 27 L. Ed. 216, it appeared that the state of Georgia had levied execution for taxes upon certain real property of the Atlantic & Gulf Railroad Company, which property was afterwards taken in possession by a receiver appointed in a foreclosure suit in the United States court against said company, wherein Jesup, surviving trustee, was plaintiff. The state of Georgia petitioned the Circuit Court for leave to proceed with said executions, which petition was refused, and the Supreme Court, on appeal, affirmed the order entered on such petition, mainly on the ground that the state had not made itself a party to the suit, but had declined so to do; and it was said that the action of the court below "cannot be reviewed upon the appeal of the state, for the reason, if there were no other, that the order did not conclude the rights which she acquired by virtue of the executions or of the levies made thereunder." The value of the holding, as regards the present case, is that the levying of the execution for the taxes did not preclude a subsequent seizure of the property by the receiver in the suit in the federal court.

In Walling v. Miller, 108 N. Y. 173, 15 N. E. 65, 2 Am. St. Rep. 400, it appeared as follows: Miller and another, judgment creditors of one Vanderoef, on the 17th of April, 1883, commenced an action in the name of Miller against Vanderoef to reach the latter's interest in certain buildings, regarded for the purpose of the decision as personal property; and in such action, on May 14, 1883, a receiver was appointed. On September 11th, by order of the court, he sold the buildings. Thereafter the plaintiff brought action against Miller and Price, the receiver and purchaser of the buildings, claiming that he was the owner thereof, and charging the defendants with conversion. The plaintiff claimed title to the buildings by virtue of sale on June 1, 1883, on an execution levied May 12, 1883, issued on a judgment recovered May 7, 1883. Therefore the plaintiff's levy on May 12, 1883, was subsequent to Miller's action begun

April 17, 1883, but was prior to the appointment of the receiver, May 14, 1883. The facts, therefore, are substantially the same as in Wiswall v. Sampson. The plaintiff's levy was subsequent to the filing of the defendant's bill, but was prior to the appointment of the receiver. The Court of Appeals held that a sale of property made under an execution, without leave of the court, while the property is in the possession of the receiver, is illegal and void, although the levy was made before the appointment of the receiver; and the ultimate question now under discussion—whether a prior levy of an attachment or execution can be interrupted by a bill in equity subsequently filed—was not involved. But the court seems to have observed no such distinction, for the opinion states:

"In Albany City Bank v. Schermerhorn, 10 Paige, 263, the chancellor, speaking of a case where an execution creditor claimed a prior lien, said: 'If the plaintiffs in the execution had acquired a legal lien, so as to overreach the lien of the complainants in the creditors' bills, they could not get the property out of the hands of the receiver except by an application to the vice chancellor for an order upon the receiver to deliver over the proceeds to be applied on the execution.' "

It will be observed that a conflict of independent jurisdiction was not involved in Walling v. Miller, supra.

In Central National Bank v. Stevens, 169 U. S. 464, 18 Sup. Ct. 415, 42 L. Ed. 807, it is said:

"But it has been frequently determined by this court that the jurisdiction of a court is not exhausted by the rendition of the judgment, but continues until the judgment shall be satisfied. Thus it is said in Riggs v. Johnson County, 6 Wall. 166, 18 L. Ed. 768, that 'process subsequent to judgment is as essential to jurisdiction as process antecedent, else the judicial power would be incomplete and entirely inadequate to the purposes for which it was conferred by the Constitution.' And in Amy v. Supervisors, 11 Wall. 136, 20 L. Ed. 101, it was said: 'The two sets of tribunals—state and national—are as independent as they are separate. Neither can impede or arrest any action the other may take, within the limits of its jurisdiction, for the satisfaction of its judgments and decrees.' 'An execution is the end of the law. It gives the successful party the fruits of his judgment.' United States v. Nourse, 9 Pet. 8, 28, 9 L. Ed. 31."

Of course, this does not intend that federal judgments may be satisfied out of property which the state court has earlier seized, nor that a state court may not stay the process, if such an attempt were made. But the same practical arrest of process obtains, where the federal court has already attached the property, that it may be in readiness to meet its executions, and the state court thereupon seizes such property, enjoins sale on the attachment, while it proceeds to determine the validity thereof and award or refuse payment according to its judgment.

However, in view of the decisions noticed above, and especially In re Hall & Stilson Co., it is considered that this court should not stay the parties in the state court under the facts now presented. The propriety of this conclusion is strengthened by the fact that Judge Davis has passed upon the right of that court to stay the marshal, and that an appeal from the order of Judge Gildersleeve has been argued before the Appellate Division, whose decision must carry its proper authority. The fact is that the state court has moneys, or may constrain the purchaser of the land to pay the

same into court, whereby the judgment in this action may be paid in case there was a valid levy of the attachment. It is to be presumed that, if the matter were properly presented to the state court, there would be an early decision, and prompt payment of the plaintiff's judgment, if he show himself entitled to the same.

The present motion is denied.